UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

MONICA BERMUDEZ,

                            Plaintiff,

-against-

THE CITY OF NEW YORK; WAYNE BAX, as Inspector,
Patrol Borough Bronx; DONALD STROMAN, as Lieutenant,
Patrol Borough Bronx; BRANDON CROKE, as Lieutenant,
Patrol Borough Bronx; CHARLES NEUSCH, as Sergeant,
Patrol Borough Bronx; DENISE DIAZ, as Police Officer,
Patrol Borough Bronx; SERINA SMITH, as Police Officer,
Patrol Borough Bronx; EDWARD SANABRIA, as Police Officer,
Latent Print Section; each being sued individually and in
their official capacities as employees of Defendant the City
of New York,

                            Defendants.

—————————————————————x

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 3/25/11              │
└─────────────────────────────────┘
```

10 Civ. 1162 (CM)

DECISION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS AND DENYING IN PART
AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMahon, J.

    Plaintiff Monica Bermudez, an officer with the New York City Police Department

("NYPD"), commenced this action against the City of New York (the "City") and seven officers

of the NYPD.  Bermudez asserts 21 claims against each Defendant under 42 U.S.C. § 1983, 42

U.S.C. § 1981, New York State Executive Law § 296, and New York City Administrative Code

§ 8-107.

    For the reasons that follow, the motions to dismiss by Neusch, Diaz, Croke, and Bax are

granted for all claims asserted by Bermudez.  As against Smith and Sanabria, Counts One, Two,

Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Nineteen, and

Twenty are dismissed. Counts Three, Six, Nine, Twelve, Fifteen, Eighteen, and Twenty-One are not dismissed and Smith's and Sanabria's motions for summary judgment on the grounds of qualified immunity as to these counts are denied. As against Stroman, Counts One, Four, Five, Seven, Ten, Eleven, Thirteen, Sixteen, Seventeen, and Nineteen are dismissed. Counts Two, Eight, Fourteen, and Twenty are dismissed without prejudice as against Stroman. Stroman's motion for summary judgment on the grounds of qualified immunity for Counts Three, Six, Nine, Twelve, Fifteen, Eighteen, and Twenty-One is denied.

## I. Defendants' Motion To Dismiss

On a motion to dismiss, the Court accepts all of Bermudez's factual allegations in the complaint as true and draws all reasonable inferences in her favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Because the individual defendants moved for summary judgment on the ground of qualified immunity, Bermudez has already been deposed. To the extent that she testified about facts that go beyond the allegations in her complaint, I am considering her testimony on the motions for summary judgment based on the grounds of qualified immunity.

## BACKGROUND

Bermudez's claims of employment discrimination stem from incidents involving certain individuals at the NYPD between 2004 and 2007.

Monica Bermudez is a Hispanic female of Puerto-Rican descent. (Compl. ¶ 9.) Bermudez became a police officer with the NYPD on January 14, 2004. (Id. ¶ 10.) Shortly after becoming an NYPD officer, Bermudez was assigned to the "Patrol Borough Bronx" and, specifically, to the Bronx Evidence Collection Team (the "BECT"). (Id. ¶ 14.)

2

For ease of analysis, I will discuss her allegations against each Defendant individually. Taken together, Bermudez claims that they make a pattern and practice of discrimination on the basis of her gender, her religious affiliation, and her race, as well as creating a hostile work environment.

1. Lieutenant Donald Stroman

Lieutenant Donald Stroman was at all relevant times Bermudez's direct supervisor. (Id. ¶ 15.) Soon after starting with the BECT, Bermudez alleges that Lieutenant Stroman began to sexually harass her. (Id. ¶ 16.) Specifically, Stroman "would press his body against [Bermudez's] and other female officer's breasts" for his own sexual gratification, and would make inappropriate sexual comments, such as "Hi, I want to give you a hug but, without your vest on." (Id. ¶¶ 17, 19-20.)

In January 2004, Bermudez asked Stroman for Sundays off because she wanted to attend religious services. (Id. ¶ 22.) According to Bermudez, Stroman responded to her request by stating "If I set foot in a church I will be struck by lightning. But, hey, I am going to Hell anyway." (Id. ¶ 23.) Bermudez also alleges that shortly after she was confirmed in 2004, Stroman and Defendant Denise Diaz "walked around the office hollering 'Praise the Lord and Alleluia!,' whenever [Bermudez] entered a room." (Id. ¶ 24.)

In May 2004, Stroman told Bermudez, "I like the way you take care of yourself," "You have a nice body," and "I like the way you dress." (Id. ¶¶ 26, 28-29.) Each time, Bermudez refused Stroman's advances. (Id. ¶ 27, 31.)

On December 14, 2004, Stroman, believing that Bermudez had slept with Police Officer Sanabria, "yelled and cursed" at Bermudez and Sanabria in a "jealous rage." (Id. ¶¶ 53-55.) That same day, Stroman threatened to report Bermudez to the "Early Intervention Unit." (Id. ¶

3

56.) Bermudez does not explain the purpose or function of the Early Intervention Unit, or whether Stroman followed through with his threat. On December 16, 2004, Bermudez was asked to submit to a "Random Dole Test." (Id. ¶ 57.) Bermudez does not explain the purpose for the Random Dole Test or who must submit to the test.

On July 20, 2005, Stroman called Bermudez's cellular telephone number while intoxicated to express his feelings towards her. (Id. ¶ 64.)

On July 22, 2005, Bermudez complained about Stroman's conduct to Joseph Anthony, a delegate of the Patrolman's Benevolent Association ("PBA"). (Id. ¶ 65.) Anthony informed Bermudez that going forward with a sexual harassment complaint against Stroman would "stigmatize[]" her. (Id. ¶ 66.) On August 4, 2005, Bermudez again complained to Anthony about Stroman's conduct. (Id. ¶ 67.) Bermudez alleges that Anthony never followed through on Bermudez's complaint by reporting it to the NYPD's Office of Equal Employment Opportunity or the Internal Affairs Bureau. (Id. ¶ 68.)

On July 19, 2005, Bermudez fell down a flight of stairs while on duty and injured her back. As a result of her back injury, on August 17, 2005, Bermudez was placed on "Limited Duty Capacity." (Id. ¶ 70.) Bermudez claims that after August 2005, Stroman and Sergeant Charles Neusch began to scrutinize her use of the NYPD's sick policy. (Id. ¶ 72.)

On October 25, 2006, Bermudez interrupted a conversation between Stroman and another officer in the BECT. (Id. ¶ 86.) When she entered the room, Bermudez claims that Stroman began making "smart comments" about "religious fanatics." (Id. ¶ 87.) According to Bermudez, before she entered the room, the conversation between Stroman and the other officer was not about religion. (Id. ¶ 88.)

4

On October 27, 2006, Sergeant Myra Rann filed a complaint on Bermudez's behalf against Stroman with the NYPD's Office of Equal Employment Opportunity ("OEEO").  (Id. ¶ 91.)  Bermudez was interviewed regarding the complaint on November 1, 2006.  (Id. ¶ 93.) Bermudez claims that the interviewers were hostile and did not appear to believe her allegations. (Id.)

At some point between October and November 2006, Stroman (and Defendants Croke and Bax) changed Bermudez's chart from "patrol" to "administrative" because she was on restricted duty after her back injury.  (Id. ¶ 95.)  According to Bermudez, other officers did not have their "chart" changed by when they were on restricted duty.  (Id. ¶ 96.)

On December 2, 2006, based on advice from another police officer, Bermudez changed her personal cellular telephone number to avoid Stroman's phone calls.  (Id. ¶ 104.)

On December 27, 2006, Stroman ordered Bermudez not to read the NYPD Patrol Guide while at work, even though other officers in the BECT were reading the newspaper.  (Id. ¶ 105.)

Between December 27, 2006 and January 9, 2007, Stroman told Anthony—the PBA delegate Bermudez had previously contacted—that Bermudez was an "Emotionally Disturbed Person."  (Id. ¶ 106.)

On July 18, 2007, Bermudez was placed on "Administrative Sick."  (Id. ¶ 118.)  On July 22, 2007, Stroman told Sergeant Salvatore Marchese that "under no circumstances [was] he to grant [Bermudez] any sick, vacation [or] chart days."  (Id. ¶¶ 119.)  Bermudez alleges that Stroman created "special workplace rules" only for her.  (Id. ¶ 120.)

On October 7, 2007, Stroman and Defendant Serina Smith were having a discussion when Stroman mentioned that "he was hungry."  (Id. ¶ 121.)  Smith moved away from the table where the two were sitting, opened her legs, and motioned for Stroman to "eat her vagina."  (Id.

5

¶ 122.) Stroman then used his tongue to simulate the performance of oral sex. (Id. ¶ 123.) Bermudez witnessed the incident.

At some point between October 7, 2007, and November 29, 2007, Bermudez was transferred from the BECT to Internal Affairs. (Id. ¶ 125.) Bermudez does not explain whether she requested the transfer or allege that the transfer was a "demotion." On November 29, Bermudez returned to the BECT in search of a "case folder." (Id.) During her visit to the BECT, Stroman asked her, "Why are you here? Are you on Official Business?" (Id. ¶¶ 126-27.) After explaining to Stroman that she was retrieving a folder, Stroman told her, "Well, get your folder and get the fuck out[.]" (Id. ¶¶ 128-29.)

2. Police Officer Edward Sanabria

Bermudez and Police Officer Edward Sanabria worked together in the BECT. (Id. ¶ 32.) On December 6, 2004, Sanabria and Bermudez were assigned to work together in a marked "Radio Motor Patrol" ("RMP") car. (Id.) It was at this time that Sanabria "expressed romantic feelings towards [Bermudez]." (Id.) Bermudez alleges that she told Sanabria that she was not interested in a romantic relationship. (Id. ¶ 33.) Sanabria and Bermudez were assigned to work together again on December 8 and Sanabria again expressed his feelings towards Bermudez. (Id. ¶ 34.) This time, when Bermudez explained that she was not interested in a relationship, Sanabria "started driving the RMP in a reckless manner while [Bermudez] was in the front passenger seat." (Id. ¶ 35.)

On December 9, 2004, after the NYPD's holiday party, Sanabria called Bermudez on her cellular telephone and asked if he could come by her apartment. (Id. ¶ 38.) At first Bermudez was reluctant, but after Sanabria pleaded with her, she agreed to meet him outside her apartment. (Id. ¶¶ 40-41.) When Sanabria arrived, Bermudez was walking her dog and she asked Sanabria

6

to wait outside while she took her dog inside. (Id. ¶¶ 42-43.) According to Bermudez, Sanabria did not wait outside and instead attempted to force himself inside her apartment. (Id. ¶ 44.)

During their conversation inside Sanabria's car, Sanabria told Bermudez that he "did not appreciate the way that [Bermudez had] been treating [him]. I am not going to take it anymore." (Id. ¶ 47.) Bermudez told him that she was not interested in a relationship and Sanabria became "very irate." (Id. ¶¶ 48-49.) According to Bermudez, she fled Sanabria's vehicle "in fear of her life and ran into her house." (Id. ¶ 50.) Following this incident, Bermudez requested a change in shifts so that she would not have to work with Sanabria, and Stroman agreed to Bermudez's request. (Id. ¶¶ 51-52.)

On August 17, 2005, Sanabria made comments in front of Bermudez about police officers "scamming the system with fake injuries" (presumably because of Bermudez's July 19 back injury). (Id. ¶ 69.)

On February 3, 2006, Stroman told Bermudez that she would be working with Sanabria again. (Id. ¶ 74.)

3. Police Officer Denise Diaz

Bermudez alleges that shortly after she was confirmed, Police Officer Denise Diaz and Stroman "walked around the office hollering 'Praise the Lord and Alleluia!,' whenever she entered a room." (Id. ¶ 24.) It appears from the complaint that Diaz's comments were made in early 2004. Bermudez does not allege how long this behavior lasted.

Diaz witnessed the December 14, 2004, incident where Stroman yelled and cursed at Sanabria and Bermudez in a jealous rage. (Id. ¶¶ 53-54.) After the incident, Diaz told Bermudez that Stroman believed that Sanabria and Bermudez had slept together. (Id. ¶ 55.)

7

On January 2, 2005, Diaz asked Bermudez if she was "seeing" Sanabria. (Id. ¶ 58.)

Bermudez alleges that Diaz was gathering information about the status of Bermudez's

relationship with Sanabria for Stroman. (Id. ¶ 59.) Bermudez does not explain why she believed

this to be the reason for Diaz's inquiry.

On May 15, 2007, Officer Diaz pushed Bermudez "out of the way" when Bermudez was

signing the "Command Log." (Id. ¶ 112.) Diaz then told Bermudez:

> I do not like you because you like to fabricate things against people. You are one
> of those people who act all innocent but really [are] not. You are a hypocrite who
> attends church, pretending to be a godly person hiding behind your religion. But,
> you are worse than the ones' [sic] who are not religious. I am doing this because I
> am woman enough to do so.

(Id. ¶¶ 113-16.)

4. Sergeant Charles Neusch

On October 21, 2006, Sergeant Charles Neusch told Bermudez that "she was wrong"

about Stroman. (Id. ¶ 75.) Bermudez does not explain what Neusch meant by his comment or

what prompted his comment.

Bermudez was placed on "Restricted Duty" after her July 2005 back injury. (Id. ¶ 76.)

Neusch told Bermudez that Defendant Wayne Bax was giving Stroman a "hard time" because

Bermudez was on restricted duty. (Id.)

Bermudez also alleges that Neusch told her that Bax and Stroman wanted her to work in

the "Vest Unit." (Id. ¶ 77.) According to Bermudez, working in the Vest Unit, requires lifting

and stacking heavy boxes of supplies and equipment. (Id. ¶ 78.) Bermudez alleges that the

assignment was inconsistent with her restricted-duty status. (Id. ¶ 79.) Bermudez started

working in the Vest Unit on October 23, 2006. (Id. ¶ 85.) There is no allegation about when she

stopped working in the Vest Unit.

8

Bermudez also alleges that between October and November 2006, another police officer told her that Neusch "posted copies of the Finest Message where she was transferred all over the walls through [the BECT]." (Id. ¶ 97.) Bermudez does not explain what the "Finest Message" is, but it can be inferred from the complaint that the "message" was informing other officers that she was transferred to the Vest Unit.

On January 9, 2007, Neusch completed Bermudez's "Yearly Performance Evaluation." (Id. ¶¶ 107-09.) Bermudez claims that Neusch was going to give Bermudez a rating of 2.5, but was warned against doing so because such a low rating could be "construed as retaliation." (Id.) Neusch instead gave Bermudez a 3.5 rating. (Id.) According to Bermudez, a 2.5 rating would have automatically placed her in the "Performance Monitoring Program" (id.).

5. Inspector Wayne Bax

Bermudez alleges that Bax threatened to transfer her from the BECT if she did not return to full active duty. (Id. ¶ 73.) Bermudez does not say when this threat was made or whether Bax acted on it.

As discussed, between October and November 2006, Bax, Stroman, and Croke changed Bermudez's chart from "patrol" to "administrative" because she was on restricted duty. (Id. ¶¶ 95-96.)

6. Lieutenant Brandon Croke

Bermudez claims that on October 23, 2006, Lieutenant Brandon Croke ordered her to begin working in the Vest Unit, even though Bermudez told Croke that she could not lift anything over ten pounds and that any impact to her back could result in paralysis. (Id. ¶¶ 80-82, 85.) According to Bermudez, Croke ordered her to work in the Vest Unit while wearing her uniform (including the vest and gun belt), despite knowing that her back injury prevented her

9

from wearing those items.  (Id. ¶ 83.)  Bermudez alleges that she was the only officer in the Vest

Unit working in uniform; the other officers in the unit were allowed to work in "street clothes."

(Id. ¶ 84.)  On October 31, 2006, Bermudez reported to work wearing "street clothes," and Croke

ordered her to put on her uniform.  (Id. ¶ 92.)

Between October and November 2006, Bax, Stroman, and Croke changed Bermudez's

chart from "patrol" to "administrative" because she was on restricted duty.  (Id. ¶¶ 95-96.)

7.  Police Officer Serina Smith

There is only one allegation concerning Police Officer Serina Smith—the October 7,

2007 sexually explicit incident involving Stroman and Smith.  (Id. ¶¶ 121-23.)  Bermudez alleges

that she witnessed Smith opening her legs while Stroman simulated the performance of oral sex.

(Id.)

## PROCEDURAL HISTORY

On February 16, 2010, Bermudez commenced the present action against the City and

Defendants Wayne Bax, Donald Stroman, Brandon Croke, Charles Neusch, Denise Diaz, Serina

Smith, and Edward Sanabria (collectively, the "Individual Defendants"), in their official and

individual capacities.

Bermudez asserts claims under 42 U.S.C. § 1981 against the City and the Individual

Defendants for racial discrimination (Count One), retaliation (Count Two), and hostile work

environment (Count Three); under 42 U.S.C. § 1983 for racial discrimination (Counts Four),

gender discrimination (Count Five), sexual harassment (Count Six), religious discrimination

(Count Seven), retaliation (Count Eight), and hostile work environment (Count Nine); under the

New York State Human Rights Law, N.Y. Exec. Law § 296, et. seq., ("NYSHRL") for racial

discrimination (Count Ten), gender discrimination (Count Eleven), sexual harassment (Count

10

Twelve), religious discrimination (Count Thirteen), retaliation (Count Fourteen), and hostile

work environment (Count Fifteen); and under the New York City Human Rights Law, N.Y.

Admin. Code § 8-107, et. seq., ("NYCHRL") for race discrimination (Count Sixteen), gender

discrimination (Count Seventeen), sexual harassment (Count Eighteen), religious discrimination

(Count Nineteen), retaliation (Count Twenty), and hostile work environment (Count Twenty-

One). Bermudez's 21 claims under federal, state, and city law are identical; Bermudez asserts all

21 claims against all of the Defendants .

On April 9, 2010, the City filed a motion to dismiss the complaint, arguing that

Bermudez's claims were time barred and, alternatively, arguing for dismissal under Federal Rule

of Civil Procedure 12(b)(6).  On May 13, 2010, the Individual Defendants filed a motion to

dismiss, raising arguments similar to those raised by the City.  On June 11, 2010, the Individual

Defendants filed a separate motion for summary judgment, arguing that they are entitled to

qualified immunity.

### DISCUSSION

#### A. Standard For Motion To Dismiss

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides that a complaint may be

dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . .

to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.

Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

11

does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations,

citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have

"nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint

must be dismissed." Id. at 570; Iqbal, 129 S. Ct. at 1950-51. The Court must liberally construe

all claims, accept all factual allegations in the complaint as true, and draw all reasonable

inferences in favor of the plaintiff. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d

Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007).

### B. Standard For Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court will grant summary judgment if the

evidence offered shows that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The Court views the record in the light most favorable to the non-movant and resolves all

ambiguities and draws all reasonable inferences against the movant. See United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834

F.2d 54, 57 (2d Cir. 1987). Additionally, the Court is permitted to rely on evidence outside of

the complaint, including Bermudez's deposition testimony.

### C. Statute Of Limitations

Bermudez's claims under Section 1983, the NYSHRL, and the NYCHRL are subject to a

three-year statute of limitations. See Owens v. Okure, 488 U.S. 235, 251 (1989) (applying three-

year statute of limitations to Section 1983 claims); Kassner v. 2nd Avenue Delicatessen Inc., 496

F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of limitations to claims under the

12

NYSHRL and the NYCHRL); Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) (three-year statute of limitations for NYSHRL claims); N.Y. C.P.L.R. § 214(2) (NYSHRL claims); N.Y.C Admin. Code § 8-502(d) (NYCHRL claims). Claims under Section 1981 are subject to a four-year statute of limitations period. See White v. City of New York, 2010 WL 2697054, at *2 (S.D.N.Y. 2010).

Bermudez commenced this action on February 16, 2010. Accordingly, her Section 1983, NYSHRL, and NYCHRL claims based on conduct that occurred before February 16, 2007, are time-barred unless Bermudez can successfully invoke an exception to the limitations period. Similarly, Bermudez's Section 1981 claims are barred if based on conduct occurring before February 16, 2006.

1. The Continuing-Violation Exception

The continuing-violation exception is most often invoked by plaintiffs alleging claims under Title VII, but it is also applied by courts in employment discrimination cases brought under Sections 1981 and 1983, and under New York state and city law. See, e.g., Washington v. County of Rockland, 373 F.3d 310, 317-18 (2d Cir. 2004) (in the context of Sections 1981 and 1983 claims); Drew v. Plaza Constr. Corp., 2010 WL 446088, at *7 (S.D.N.Y. 2010) (New York state and city anti-discrimination laws).

Under the continuing-violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. County of Oneida, 375 F.3d 206, 220

13

(2d Cir. 2004). In Nat'l R.R. Passenger Corp. v. Morgan, 539 U.S. 101, 113-15 (2002), the

Supreme Court explained that, "Discrete acts such as termination, failure to promote, denial of

transfer, or refusal to hire are easy to identify," and are "not actionable if time barred, even when

they are related to acts alleged in timely filed charges." "Instead, 'Each discrete discriminatory

act starts a new clock for filing charges alleging that act, and even serial violations—a series of

discrete but related acts of discrimination—do not warrant application of the continuing

violations doctrine." Milani v. International Business Machines Corp., Inc., 322 F. Supp. 2d

434, 452 (S.D.N.Y. 2004) (quoting Morgan, 539 U.S. at 113-14).

The standard for applying the continuing-violation doctrine to claims under the

NYCHRL and the NYSHRL is also governed by Morgan. See, e.g., Bartman v. Shenker, 786

N.Y.S.2d 696, 702 (N.Y. Sup. Ct. 2004) (applying the Supreme Court's decision in Morgan to

determine whether the continuing-violation doctrine saved plaintiff's otherwise untimely hostile

work environment and discrimination claims under the NYCHRL and the NYSHRL); accord

Sculerati v. N. Y. Univ., 2003 WL 21262371, at *3 (N.Y. Sup. Ct. May 16, 2003) (same); see

also Lu v. Chase Inv. Services Corp., 2009 WL 4670922, at *7 (E.D.N.Y. 2009) (same).

**D. The Law Of Employment Discrimination**

1.  Section 1983 Claims of Employment Discrimination

To state a claim under 42 U.S.C. § 1983 against the Individual Defendants, Bermudez

must allege that: (1) the Individual Defendants were acting under color of state law, and (2) the

Individual Defendants' conduct deprived Bermudez of a constitutional or a federal statutory

right. See Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004). The

deprivation alleged by Bermudez is race, gender, and religious discrimination and a hostile work

environment.

14

Employment discrimination claims under 42 U.S.C. § 1983, whether based on race, religion, or gender, are analyzed under the McDonnell Douglas framework. See Boykin v. Key Corp., 521 F.3d 202, 213 (2d Cir. 2008). Bermudez must allege the following four elements: (1) she falls within a protected class, (2) she was performing her duties satisfactorily, (3) she was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. See Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to survive a motion to dismiss, Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002), Bermudez must allege sufficient facts showing that she is entitled to relief. See, e.g., Alleyne v. American Airlines, Inc., 548 F.3d 219, 221 (2d Cir. 2008); Leibowitz v. Cornell University, 445 F.3d 586, 591 (2d Cir. 2006).

When the defendant sued for discrimination under § 1983 is a municipality or an individual sued in his official capacity, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom. See Patterson v. County of Oneida, 375 F.3d 206, 225-227 (2d Cir. 2004) (citing Jett v. Dallas Independent School District, 491 U.S. at 733-36; Monell v. Department of Social Services, 436 U.S. 658, 692-94 (1978)) (internal citations omitted). Moreover, to bring a claim within the continuing-violation exception, the plaintiff must allege the occurrence of at least one discriminatory act during the statute of limitations period. See, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998); Browne v. New York State Officials of Mental Health, 2001 WL 533609, at *1 (2d Cir. May 17, 2001).

15

a. Section 1983 Claims alleging Retaliation

To recover under Section 1983 for a deprivation of her equal protection rights—

stemming from retaliation for complaining about discrimination—Bermudez must plead facts

from which the Court can infer that she suffered a "materially adverse employment action."

Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007); see also Gatto v. Jet Blue Airways, 2010 WL

125974, at **1-2 (S.D.N.Y. Jan. 13, 2010). Bermudez must also allege facts from which to infer

that she participated in a "protected activity" and that the adverse action taken by the defendant

is "causally connected" to her participation in the protected activity. See, e.g., Broich v.

Incorporated Village of Southampton, 2011 WL 284484, at *15 (E.D.N.Y. Jan. 25, 2011). A

plaintiff engages in a protected activity when she "'oppose[s] any practice made an unlawful

employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under [Title VII].'"

Murdaugh v. City of New York, 2011 WL 798844, at *5 (S.D.N.Y. Mar. 8, 2011) (quoting 42 U

.S.C. § 2000e-3(a)).

A plaintiff sustains an adverse employment action if he or she endures a "materially

adverse change" in the terms and conditions of employment. See Richardson v. New York State

Dep't of Correctional Serv., 180 F.3d 426, 446 (2d Cir. 1999) (relying on Crady v. Liberty Nat'l

Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). A materially adverse change is a

change in working conditions that is "more disruptive than a mere inconvenience or an alteration

of job responsibilities." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)

(quoting Crady, 993 F.2d at 136). Examples of a materially adverse change include the

"termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

2. Section 1981 Claims of Employment Discrimination

Section 1981 provides that

> [a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981.

Claims of employment discrimination under Section 1981 are analyzed under the same framework that applies to Title VII claims and claims under Section 1983. See, e.g., Patterson, 375 F.3d at 225; see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) (§ 1983); Sorlucco v. New York City Police Department, 888 F.2d 4, 6-7 (2d Cir. 1989) (same).

When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981. Jetts v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); see also Gladwin v. Pozzi, 2010 WL 5141233, at *2 (2d Cir. Dec. 20, 2010) (explaining that plaintiff's section 1981 claims are "encompassed" by her section 1983 claims and analyzed under Section 1981); Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 707 (S.D.N.Y. 2003). Thus, claims against the Individual Defendants in their official capacity or against the City, must be brought under Section 1983. To the extent that Bermudez alleges such claims under Section 1981, those claims are dismissed as against the City and the Individual Defendants in their official capacity.

Retaliation claims under Section 1981 are treated similarly to retaliation claims under Section 1983. See, e.g., Schiano v. Qual. Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006);

17

see also Broich v. Incorporated Village of Southampton, 2011 WL 284484, at *15 (E.D.N.Y. Jan. 25, 2011).

### 3. Claims of Employment Discrimination under the NYSHRL

Claims of employment discrimination under the NYSHRL are analyzed under the same McDonnell Douglas framework applied to Section 1983 and Title VII claims of employment discrimination. See, e.g., Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (in the context of a NYSHRL claim); Vargas v. Morgan Stanley, 2010 WL 3911494, at *7 (S.D.N.Y. 2010).

Moreover, retaliation claims under the NYSHRL are treated the same as retaliation claims under Section 1983 and Section 1981. See, e.g., McMenemy v. City of Rochester, 241 F.3d 279, 283 n.1 (2d Cir. 2001) (NYSHRL claims). Under New York law (as is true under federal law), a plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. See Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 446 (2d Cir. 1999) (relying on Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady, 993 F.2d at 136). Examples of a materially adverse change include the "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

### 4. Claims of Employment Discrimination under the NYCHRL

Similarly, claims of employment discrimination under the NYCHRL are analyzed under the same McDonnell Douglas framework applicable to Title VII, Section 1983, and NYSHRL

18

claims.  See Spiegel, 604 F.3d at 80; see also Pilgrim v. McGraw-Hill Cos., 599 F. Supp. 2d 462,

468 (S.D.N.Y. 2009) ( "[T]he standard for all Title VII, section 1981, [New York State Human

Rights Law] and [NY]CHRL employment discrimination claims is the same.").

Moreover, an adverse employment action under the NYCHRL is defined the same as

under the NYSHRL and Section 1983:  "A materially adverse change might be indicated by a

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices . . . unique to a particular situation."  Hanna v. New York Hotel Trades Council,

851 N.Y.S.2d 818, 825 (N.Y. Sup. Ct. 2007) (quoting Galabya v. New York City Bd. of Educ.,

202 F.3d 636, 640 (2nd Cir. 2000)).

Unlike retaliation claims under Section 1983 and NYSHRL, the retaliation complained of

under the NYCHRL "need not result in an ultimate action with respect to employment . . . or in a

materially adverse change in the terms or conditions of employment."  Instead, the retaliatory act

that the plaintiff complains of must "be reasonably likely to deter a person from engaging in

protected activity."  Kumaga, 2010 WL 1444513, at * 15 (quoting N.Y. Admin. Code. § 8-107).

For claims of retaliation, the plaintiff must show a "causal link" between the protected activity

and the retaliatory act.  Id.; see also Williams v. N.Y. City Housing Auth., 335 F. App'x 108,

110, 2009 WL 1774271, at *2 (2d Cir. June 24, 2009) (NYCHRL claims); Nettles v. LSG Sky

Chefs, 2010 WL 2695640, at *8 (N.Y. Sup. Ct. 2010) (NYCHRL); Albunio v. City of New

York, 889 N.Y.S.2d 4, 9-10 (N.Y. App. Div. 2009) (listing the elements of a retaliation claim

under NYCHRL).

5. Claims of Employment Discrimination against a Municipality

In Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), the Supreme

Court held that municipalities are "persons" subject to damages liability for violations of 42

U.S.C. § 1983 by municipal officials. A municipality may only be liable for constitutional

claims under section 1983 if the alleged offending conduct was undertaken pursuant to "a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by [the

municipal] officers[,] . . . [or] governmental 'custom' even though such a custom has not

received formal approval through the . . . [municipality's] official decisionmaking channels."

Monell, 436 U.S. at 690; Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). To

hold a municipality liable, that liability cannot be premised on the mere fact that the municipality

employed the offending official—meaning that liability cannot be based on a theory of

respondeat superior. See City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); see also

Banushi v. City of New York, 2010 WL 4065414, at *11 (E.D.N.Y. 2010).

Moreover, "if the police officer[s] [are] not liable to plaintiff for any constitutional

violation, then the City cannot be liable on a Monell theory." Thompson v. Tracy, 2008 WL

190449, at *1 (S.D.N.Y. Jan. 17, 2008) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799

(1986)).

## E. Hostile Work Environment Claim

1. Hostile work environment claims under Section 1983, Section 1981, and NYSHRL

To establish a hostile work environment claim under federal and New York state law,

Bermudez must show that her workplace was "permeated with discriminatory intimidation,

ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her]

employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S.

20

17, 21 (1993) (quotation marks and citations omitted); Patterson v. County of Oneida, 375 F.3d

206, 227 (2d Cir. 2004); see also Kumaga v. New York City School Constr. Auth., 2010 WL

1444513, at *8 (N.Y. Sup. Ct. Apr. 2, 2010) (NYSHRL); Forrest v. Jewish Guild for Blind, 3

N.Y.3d 295, 305, 310-11, (N.Y. 2004) (applying standard for New York state law claim of

hostile work environment). Courts must look at the totality of the circumstances to determine

whether an environment is "hostile" or "abusive" and should consider the following

nonexclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3)

whether it is physically threatening or humiliating, or a mere offensive utterance; and (4)

whether it unreasonably interferes with an employee's "work performance." Harris, 510 U.S. at

23. Plaintiff's evidence, if any, must show that the conduct at issue created an environment that

is both objectively and subjectively hostile. Richardson v. N.Y. State Dep't of Corr. Serv., 180

F.3d 426, 436 (2d Cir. 1999); White v. Fuji Photo Film USA, Inc., 434 F. Supp. 2d 144, 154 -

155 (S.D.N.Y. 2006). Bermudez must demonstrate not only that she found the environment

offensive, but that a reasonable person also would have found the environment to be hostile or

abusive. Harris, 510 U.S. 17, 21-22.

Even when a plaintiff establishes that she was exposed to an objectively and subjectively

hostile work environment, "she will not have a claim . . . unless she can also demonstrate that the

hostile work environment was caused by animus towards her as a result of her membership in a

protected class." Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper, 281 F. Supp. 2d

689, 704 (S.D.N.Y. 2003). This is true for claims under Section 1981, Section 1983, and the

NYSHRL. See, e.g., Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006);

Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006). "An environment that would be

equally harsh for all workers, or that arises from personal animosity, is not actionable under the

21

civil rights statutes." Forts v. City of N.Y. Dep't of Corr., 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." Ennis v. Sonitrol Mgmt. Corp., 2006 WL 177173, at *9 (S.D.N.Y. Jan.25, 2006) (citations omitted).

2.  Hostile Work Environment Claims under the NYCHRL

The standard for maintaining a hostile work environment claim is lower under the NYCHRL. "The New York City Human Rights Law was intended to be more protective than the state and federal counterpart." Farrugia v. N. Shore Univ. Hosp., 820 N.Y.S.2d 718, 724 (N.Y. Sup.Ct. 2006). The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 2009) (citing Farrugia, 820 N.Y.S.2d at 725). Thus, to survive summary judgment, Bermudez need only adduce evidence of "the existence of unwanted gender-based conduct" because liability under NYCHRL is "determined by the existence of unequal treatment." Id. at 13, 15. Nonetheless, even under the NYCHRL, "'petty, slight, or trivial inconvenience[s]' are not actionable." Kumaga, 2010 WL 1444513, at *14 (quoting Williams, 872 N.Y.S. 2d at 38).

3.  Hostile Work Environment due to Sexual Harassment.

There are two types of sexual harassment claims: (1) claims based on direct discrimination (also called *quid pro quo* sexual harassment), and (2) claims based on a hostile environment due to sexual harassment. See Carrero v. New York City Housing Authority, 890 F.2d 569, 577 (2d Cir. 1989). The so-called *quid pro quo* sexual harassment, "occurs when an

22

employer alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands." Id. The second type of sexual harassment, called hostile environment, "occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" Id. (quoting Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 65 (1986)). Bermudez's allegations go to the latter type of sexual harassment—one that creates a hostile work environment—and, as such, her hostile work environment and sexual harassment claims will be analyzed together. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (actionable sexual harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult"); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 768 (1998).

## F. Qualified Immunity

### 1. Federal Standard for Qualified Immunity

Government officials performing discretionary functions are entitled to qualified immunity "from federal constitutional claims . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The inquiry is a two-step one, although the steps no longer need to be taken in any particular order. Pearson v. Callahan, 555 U.S. 223 (2009). The Court must determine whether, taking the facts in the light most favorable to the party asserting the injury, the plaintiff's constitutional rights were violated. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer to that question is no, then the officer defendant will be entitled to judgment dismissing the complaint, but not on the ground of qualified immunity. Rather, he will be entitled to dismissal

23

of the claim against him because he did nothing wrong. Stephenson v. John Doe, Detective, 332

F.3d 68, 78-81 (2d Cir. 2003). Only if the officer defendant violated the plaintiff's constitutional

rights will the Court have to decide whether a reasonable officer in defendant's position (as that

position is described by plaintiff) ought to have known that he was violating plaintiff's

constitutional rights by doing what plaintiff alleges he did.

2. New York's Version of Qualified Immunity

The doctrine of qualified immunity is generally understood to only protect government

officials from federal, not state, causes of action. Jenkins v. City of New York, 478 F.3d 76, 86

(2d Cir. 2007). New York common law, however, fills this gap by providing government

officials with a similar form of protection against state law claims. Id.; see Jones v. Parmley,

465 F.3d 46, 63 (2d Cir. 2006). "New York law . . . grant[s] government officials qualified

immunity on state-law claims except where the officials' actions are undertaken in bad faith or

without a reasonable basis." Jones, 465 F.3d at 63 (citing Blouin ex rel. Estate of Pouliot v.

Spitzer, 356 F.3d 348, 364 (2d Cir. 2004) and Arteaga v. State, 72 N.Y.2d 212, 216-17, 532

N.Y.S.2d 57, 527 N.E.2d 1194 (N.Y. 1988)). "To be entitled to qualified immunity, it must be

established that it was objectively reasonable for the police officers involved to believe that their

conduct was appropriate under the circumstances, or that officers of reasonable competence

could disagree as to whether their conduct was proper." Allen v. City of New York, 03 Civ.

2829, 2007 WL 24796, at *24 (S.D.N.Y. Jan. 3, 2007) (internal citations and quotations

omitted). Thus, as is true of federal law, an officer's entitlement to qualified immunity under

New York law depends on the reasonableness of his ultimately illegal actions. Jones, 465 F.3d at

64 (citing cases). However, the reasonableness of an officer's action is judged with references to

state law and the state, not the federal, constitution. Allen, 2007 WL 24796, at *24 (citing Doyle

24

v. Rondout Valley Cent. Sch. Dist., 3 A.D.3d 669, 670-71, 770 N.Y.S.2d 480 (N.Y. App. Div. 2004)).

## The Individual Defendants

### A. Lieutenant Donald Stroman

1. Count One—Race Discrimination under Section 1981

In her First Cause of Action, Bermudez alleges that Stroman discriminated against her on the basis of race (Puerto Rican). (Compl. ¶ 9.)

Claims under Section 1981 have a four-year statute of limitations. White v. City of New York, 2010 WL 2697054, at *2 (S.D.N.Y. 2010). Thus, any conduct that occurred before February 16, 2006 is barred by the statute of limitations unless the continuing-violation exception applies.

Bermudez alleges that the following incidents occurred after February 16, 2006: (1) In October 2006, Stroman made a comment about "religious fanatics" in Bermudez's presence (Compl. ¶ 87); (2) In October or November 2006, Stroman changed Bermudez's patrol chart to an administrative chart (id. ¶ 95); (3) In December 2006, Stroman ordered Bermudez not to read the NYPD Patrol Guide at work (id. ¶ 105); (4) In July 2007, Stroman ordered another officer not to grant Bermudez any sick or vacation days  (id. ¶ 119); (5) In October 2007, Stroman and Smith engaged in a sexually explicit act in front of Bermudez (id. ¶ 121-23); and (6) In November 2007, Stroman yelled and cursed at Bermudez when she returned to the BECT to obtain a case folder (id. ¶¶ 125-29).

Although all six of these allegations involving Stroman are timely, there are no allegations connecting Stroman's conduct to animus against Bermudez because of her race. Although Bermudez states in conclusory fashion that the "City and its agents have a long history

25

of discriminating against female minority officers" (Compl. ¶ 11), Bermudez does not provide any details or examples to support her allegation, or explain how Stroman in particular has a long history of such discrimination.  It cannot be inferred from Bermudez's allegations that Stroman's actions were due to Bermudez's race.  None of the incidents have anything to do with race.

Additionally, none of the allegations involving Stroman alleges that Bermudez suffered an adverse employment action because of her race—an essential element of an employment discrimination claim under federal law.  See Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  Bermudez does not allege that she was terminated, that she was demoted, or that her salary or benefits were decreased because she is Puerto Rican.  See, e.g.,  Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady, 993 F.2d at 136) (providing examples of adverse employment actions)).  Moreover, Bermudez does not allege that Stroman was in any way involved in her transfer to Internal Affairs.

The pleading of Count One as against Stroman—as is true of the pleading of many claims against many defendants—is nothing more than the recitation of a false syllogism:  (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class).  Absent allegations of fact tending to show that Stroman made these statements because of Bermudez's, she fails to state a claim. Grillo v. N.Y. City Transit Auth., 291 F. 3d 231 (2d Cir. 2002).

Accordingly, Count One as against Stroman is dismissed.

2.  Count Two—Retaliation Under Section 1981

In her Second Cause of Action, Bermudez alleges that Stroman retaliated against her because she filed a complaint about Stroman's conduct with Joseph Anthony, a PBA delegate, and the NYPD's Office of Equal Employment Opportunity ("OEEO").

26

Bermudez alleges that on July 22, 2007, Stroman told another officer "that under no circumstances is he to grant [Bermudez] any sick, vacation and/or chart days." (Compl. ¶ 119.) However, Bermudez does not specifically allege that she actually loss any sick and vacation days.

The loss of all vacation and sick days—material benefits of her employment with the NYPD—is sufficient to allege a materially adverse employment action under Section 1981. See, e.g., Galabya, 202 F.3d at 640 (listing a "material loss of benefits" as an example of a materially adverse employment action).

Thus, Count Two is dismissed as against Stroman without prejudice. Bermudez may amend her complaint to allege facts that would support an inference that Stroman's actions cost her a material benefit of employment with the NYPD, such as sick and vacation days.

3.  Count Three—Hostile Work Environment Under Section 1981

a.  Statute of Limitations

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002), the Supreme Court explained that "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." The Court in Morgan explained that the continuing-violation exception should be applied to hostile work environment claims because such claims challenge "repeated conduct" that "occurs over a series of days or perhaps years . . ." (id. at 115) and not—as is the case with claims of discrimination—"conduct that is a discrete unlawful act" id. at 117. See also Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). Therefore, for hostile work environment claims, so long as one act is within the limitations period, all of the

acts can be relied on to show a hostile work environment. Shomo, 579 F.3d at 181; see also Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004).

Bermudez has alleged at least one act of sexual harassment that occurred within the limitations period and involved Stroman. Specifically, on October 7, 2007, Stroman and Smith performed a sexually explicit act in Bermudez's presence. (See Compl. ¶¶ 121-24.) Other allegations in the complaint also support an inference that Bermudez was subject to harassing conduct throughout her tenure in the BECT. For instance, beginning in 2004, Stroman made inappropriate sexual comments, gestures, and acts that lasted at least until late 2006 and between 2004 and 2005, and again in 2006 and 2007, Stroman and Diaz made comments involving Bermudez's religion. Thus, when taken as a whole, Bermudez's allegations are sufficient to plead the existence of a hostile work environment due to Stroman's actions that began when she arrived at the BECT in 2004 and lasted until she left in 2007. See, e.g., Bartoli v. City of New York, 2010 WL 1539055, at *3 (E.D.N.Y. Apr. 19, 2010) (applying Morgan's continuing violation exception to hostile work environment claims under §1983, § 1981, NYSHRL, and NYCHRL).

Moreover, because the continuing-violation exception is applied in the same way whether the claim is under federal, state, or city law, all of Bermudez's hostile work environment claims as against Stroman (whether under Section 1981, Section 1983, the NYSHRL, or the NYCHRL) are timely. I will thus turn to whether the allegations state a claim against Stroman.

b. Hostile Work Environment Claim

According to Bermudez, once Stroman found out that she was a practicing Catholic, he would "say things like praise the Lord or halleluiah" approximately "six to eight times a week" when Bermudez entered a room. (O'Connor Decl. Ex. A, 40:17-25, 41:1-2, 41:8-11.) Bermudez

28

admits that she never asked Stroman to stop making these comments, but that Stroman stopped the comments after Bermudez filed her 2006 OEEO complaint.  (Id. at 42:4-6, 41:12-17.)

Bermudez testified that Stroman invited her to his house on five to ten different occasions between January 2004 and November 2007.  (Id. at 55:6-14.)  Each time, Bermudez told him that she would accept the invitation only if he agreed to attend mass with her.  (Id. at 55:15-18.) According to Bermudez, Stroman responded that "he would burn in hell if he set foot in church, there was no way he could go to church, that he loved the alcohol and women too much to attend church."  (Id. at 42:9-20.)  Bermudez also testified that she overheard Stroman telling another police officer during a conversation, "You know those fanatics, religious fanatics."  (Id. at 43:15-23.)

Shortly before Bermudez transferred to Internal Affairs in November 2007, Stroman told her that she should be "worried" about her position in the BECT.  (Id. at 44:3-19.)  Bermudez told Stroman, "I don't need to be afraid or worried . . . there [is] only one person that I would be worried [about] and that would be my chief."  (Id.)  In response, Stroman asked, "Your chief?" and Bermudez explained, "Yes, God."  (Id.)  Bermudez states that following this conversation, Stroman told Joe Anthony, a PBA delegate, that Bermudez was "an emotionally disturbed person."  (Id.)

Bermudez also testified that Stroman called her to "express his romantic feelings" and to tell her that she had a "beautiful body," that he "loved" her, and that he wanted to "make love" to her.  (Id. at 55-56.)  Stroman would also tell Bermudez that she "had a great body, that he liked the way [she] dressed, the way that [she] looked, the way [she] carried [her]self."  (Id. at 56:14-17.)  Bermudez stated that on various occasions, between May 2004 and 2006, Stroman told her that she should take her vest off so that he could "hug" her.  (Id. at 59:1-11, 59:12-15.)

29

Bermudez testified that Stroman never attempted to touch her in a sexually suggestive way and that he never attempted to kiss or force himself on her. (Id. at 60:6-11.) In October 2007, Stroman and Smith engaged in a sexually explicit act in front of Bermudez.

Bermudez testified that while she was on medical leave in 2007, Stroman called her once a week to ask when she would return to work. (Id. at 97:3-21.) When Bermudez returned to work, she was placed on restricted duty and Stroman repeatedly asked her whether she was "cleared" to return to full duty. (Id. at 99:10-16, 100:6-12.) Bermudez also testified that she overheard Neusch and Stroman say that they believed she was "faking" her injury, but that neither individual told her this directly. (Id. at 101:7-19, 101:11-13.) According to Bermudez, Stroman assigned her to work in the Vest Unit in 2006—an assignment that was inconsistent with her restricted duty status. (Id. at 109:11-20.)

Bermudez must "show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

30

As the Second Circuit has explained:

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"

Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (quoting Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000)); see also Polito v. Tri-Wire Engineering

Solution, Inc., 699 F. Supp. 2d 480, 495-96 (E.D.N.Y. 2010). "The environment need not be

'unendurable' or 'intolerable.'" Terry, 336 F.3d at 148. Moreover, "the fact that the law

requires harassment to be severe or pervasive before it can be actionable does not mean that

employers are free from liability in all but the most egregious cases." Id. (quoting Whidbee, 223

F.3d at 70 (internal quotation marks omitted)). Based on Bermudez's testimony, a reasonable

jury could conclude that Stroman's comments and actions between 2004 and 2007 were

sufficiently severe and pervasive so as to create a hostile work environment.

Bermudez testified that Stroman—her direct supervisor—repeatedly invited her to his

house, made comments about her body, expressed romantic feelings towards her in person and

over the phone, and repeatedly expressed a desire to "hug" her. In October 2007, Stroman also

engaged in a sexually explicit gesture in front of Bermudez. Looking at the evidence in the light

most favorable to Bermudez, it appears that Stroman's offensive comments lasted for the entire

time that Bermudez was in the BECT. At a minimum, Bermudez has pleaded sufficient facts

from which a reasonable juror could find that she was subject to a workplace permeated with

harassment that was sufficiently severe and pervasive as to alter the conditions of her work

environment. There is no basis on which to dismiss this Count as against Stroman.

31

a. Qualified Immunity

In this circuit, an employee's right to be free from sexual harassment in the workplace is well-settled, and has been for some time.  See Carrero v. New York City Housing Auth., 890 F.2d 569 (2d Cir. 1989) (recognizing claim for hostile environment sexual harassment under the Equal Protection Clause); see also Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 130 (2d Cir. 2004).

No reasonable supervisor in Lieutenant Stroman's position could have thought that he was permitted to make sexual advances and sexually-charged comments to an employee in the workplace.  If Stroman did as Bermudez alleges, then he is not entitled to qualified immunity under federal law.

Accordingly, Stroman's motion for summary judgment dismissing Count Three on the grounds of qualified immunity is denied.

4. Count Four—Race Discrimination Under Section 1983

In her Fourth Cause of Action, Bermudez alleges that Stroman discriminated against her on the basis of her race in violation of Section 1983.

As discussed in the context of Bermudez's Section 1981 race discrimination claim, Bermudez makes certain timely allegations involving Stroman:  (1) In July 2007, Stroman ordered another officer not to grant Bermudez any sick or vacation days  (id. ¶ 119); (2) In October 2007, Stroman and Smith engaged in a sexually explicit act in front of Bermudez (id. ¶ 121-23); and (3) In November 2007, Stroman yelled and cursed at Bermudez when she returned to the BECT to obtain a case folder (id. ¶¶ 125-29).  Because the statute of limitations for claims under Section 1983 is three years, all of the other allegations against Stroman (occurring before February 16, 2006) are untimely, and they are not revived by the continuing-violations doctrine.

32

Section 1983 and Section 1981 employment discrimination claims based on race are treated similarly. See, e.g., Gladwin v. Pozzi, 2010 WL 5141233, at **2-3 (S.D.N.Y. Dec. 20, 2010). Thus, Count Four is dismissed as against Stroman for the reasons Bermudez's race discrimination claim in Count One is dismissed. In both instances, Bermudez has failed to state a claim of employment discrimination based on race.

5. Count Five—Gender Discrimination under Section 1983

Section 1983 claims may be brought within three years. See Owens v. Okure, 488 U.S. 235, 251 (1989). Thus, any conduct occurring before February 16, 2007 is untimely.

As discussed, in the context of Bermudez's race discrimination claim in Count Four, only three acts by Stroman occurred after February 16, 2007, and Bermudez does not allege that any of these incidents occurred because of gender-based animosity. Bermudez does not allege facts, for instance, tending to show that she was terminated because she is female or was not promoted because she is female. Moreover, none of the three timely incidents allege an adverse employment action.

To the extent that her hostile work environment claim is gender-based, of course, Bermudez's case will proceed. Hostile work environment arose as a form of gender-based discrimination. The doctrine has been extended to other types of discrimination. However, Bermudez's claims of gender discrimination appear to be co-terminus with her hostile work environment (Count Three) and sexual harassment (Count Six) claims. In order to avoid duplication, I treat Count Five as alleging gender discrimination other than hostile work environment or sexual harassment. No facts are alleged suggesting gender-based discrimination other than hostile work environment or sexual harassment.

33

Accordingly, Bermudez's gender discrimination claim in Count Five as against Stroman is dismissed for failure to state a claim.

6.  Count Six—Sexual Harassment under Section 1983

Count Six, sexual harassment, is also a form of gender discrimination and, as stated above, is treated separately. As discussed in the context of Bermudez's hostile work environment claim in Count Three, Bermudez has set forth sufficient evidence from which a reasonable juror could find that Bermudez was subject to a workplace permeated with sexual harassment sufficiently severe and pervasive as to create a hostile working environment.

Additionally, Stroman is not entitled to qualified immunity under federal law, because no reasonable supervisor in Stroman's position could have believed that he was permitted to make unwanted sexual advances and sexually-charged comments to an employee.

7.  Count Seven—Discrimination based on Religion under Section 1983

In Count Seven, Bermudez alleges that Stroman discriminated against her because she is Catholic.

Bermudez alleges that Stroman made the following statements concerning her religion: (1) In early 2004, Stroman commented to Bermudez that "If I set foot in a church I will be struck by lightning. But, hey, I am going to Hell anyway" (Compl. ¶ 23); (2) In early 2004, Stroman and Diaz yelled "Praise the Lord and Alleluia" when Bermudez entered a room (id. ¶ 24); and (3) In October 2006, Stroman made a comment about "religious fanatics" when Bermudez entered a room (id. ¶ 86-87).

None of these statements was made within the three-year limitations period for claims under Section 1983, because they were all made before February 16, 2007.  Two of the

statements occurred in 2004, approximately two years after the statute of limitations expired, and one statement occurred in 2006, approximately four months outside of the limitations period.

Furthermore, while the statements might be offensive, these statements are not tied to any adverse employment action. Rather, they appear to be actionable (and timely) only as part of the hostile work environment claim asserted in the Third Cause of Action.

Accordingly, Bermudez's religious discrimination claim in Count Seven as against Stroman is barred by the statute of limitations.

8. Count Eight—Retaliation under Section 1983

In Count Eight, Bermudez alleges that she was wrongfully retaliated against because she complained about Stroman to Joseph Anthony, a PBA delegate, and to the NYPD's Office of Equal Employment Opportunity.

Retaliation claims under Section 1983 are treated similarly to retaliation claims under Section 1981. See, e.g., Patterson, 375 F.3d at 225; see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) (§ 1983); Sorlucco v. New York City Police Department, 888 F.2d 4, 6-7 (2d Cir. 1989) (same). Thus, Bermudez's retaliation claim under Section 1983 in her Eighth Cause of Action as against Stroman is dismissed without prejudice for the reasons discussed in Count Two.

9. Count Nine—Hostile Work Environment under Section 1983

Hostile work environment claims under Section 1981 and Section 1983 are treated identically. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006) (NYSHRL); Tilghman v. Waterbury Bd. of Edu., 2005 WL 3019251, at *2

35

(2d Cir. Nov. 10, 2005) (Sections 1983 and 1981 claims). Thus, Stroman's motion for summary judgment on the grounds of qualified immunity on Bermudez's hostile work environment claim under Section 1983 is denied for the reasons discussed in Count Three.

10. Count Ten—Race Discrimination under NYSHRL

Employment discrimination claims (whether because of race, gender or religion) under the NYSHRL are treated the same as employment discrimination claims under Section 1983 and Section 1981. See, e.g., Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010); Vargas v. Morgan Stanley, 2010 WL 3911494, at *7 (S.D.N.Y. 2010).

Thus, Bermudez's race discrimination claim under the NYSHRL in her Tenth Cause of Action as against Stroman is dismissed for the same reasons that her race discrimination claim under Section 1981 and Section 1983 in Counts One and Four are dismissed. Count Ten as against Stroman is dismissed for failure to state a claim.

11. Count Eleven—Gender Discrimination under NYSHRL

Bermudez's gender discrimination claim under the NYSHRL in her Eleventh Cause of Action as against Stroman is dismissed for the same reasons that her gender discrimination claim under Section 1983 in Count Five is dismissed.

12. Count Twelve—Sexual Harassment under NYSHRL

In Count Twelve, Bermudez asserts a hostile work environment claim based on sexual harassment by Stroman.

As discussed in the context of Bermudez's hostile work environment claim under Section 1981 in Count Three, a reasonable juror could conclude that Stroman's actions created a hostile workplace permeated with sexual harassment. Additionally, hostile work environment claims under the NYSHRL are treated the same as such claims under federal law. See, e.g., Murdaugh

36

v. City of New York, 2011 WL 798844, at *5 (S.D.N.Y. 2011); Ochei v. The Mary Manning

Walsh Nursing Home Co., 2011 WL 744738, at *4 (S.D.N.Y. Mar. 1, 2011).

Moreover, it is clearly established that New York state law prohibits sexual harassment

and discrimination in the workplace. See N.Y. Exec. Law § 296. Thus, Stroman is not entitled

to qualified immunity under New York law and his motion for summary judgment on Count

Twelve is denied.

13. Count Thirteen—Discrimination based on Religion under NYSHRL

Bermudez's religious discrimination claim under the NYSHRL in her Thirteenth Cause

of Action as against Stroman is dismissed for the same reasons that her religious discrimination

claim under Section 1983 in Count Seven is dismissed.

14. Count Fourteen—Retaliation under NYSHRL

Claims of retaliation under NYSHRL are treated the same as retaliation claims under

federal law. See, e.g., McMenemy v. City of Rochester, 241 F.3d 279, 283 n.1 (2d Cir. 2001)

(NYSHRL claims).

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as

against Stroman is dismissed for the same reasons that her retaliation claims under Section 1981

in Count Two and her Section 1983 claim in Count Eight are dismissed.

15. Count Fifteen—Hostile Work Environment under NYSHRL

As discussed with regards to Counts Three, Six, Nine, and Twelve above, Bermudez has

adduced sufficient evidence from which a reasonable juror could conclude that Stroman's actions

created a hostile work environment. Thus, Stroman's motion for summary judgment on Count

Fifteen is denied. Moreover, Stroman is not entitled to qualified immunity on this Count.

16. Count Sixteen—Race Discrimination under NYCHRL

In her Sixteenth Cause of Action, Bermudez alleges that she was discriminated against because of her race.

Claims of employment discrimination under the NYCHRL are analyzed under the same McDonnell Douglas framework applicable to Title VII, Section 1983 and NYSHRL claims. See Spiegel, 604 F.3d at 80. Thus, for the same reasons that Bermudez's Section 1981, Section 1983, and NYSHRL race discrimination claims were dismissed, Bermudez's claim under the NYCHRL is also dismissed.

17. Count Seventeen—Gender Discrimination under NYCHRL

Bermudez's gender discrimination claim under the NYCHRL in her Seventeenth Cause of Action as against Stroman is dismissed for the same reasons that her gender discrimination claims under Section 1983 and the NYSHRL in Counts Five and Eleven are dismissed.

18. Count Eighteen—Sexual Harassment under NYCHRL

In Count Eighteen, Bermudez alleges that she endured a hostile work environment based on sexual harassment in violation of the NYCHRL.

As was true for Counts Three, Six, Nine, Twelve, and Fifteen, Bermudez's allegations are sufficient. Indeed, all that is required under the NYCHRL is that Bermudez proffer evidence of "unwanted gender-based conduct." Williams v. New York City Housing Auth., 872 N.Y.S.2d 27, 13 (N.Y. App. Div. 2009). Bermudez testified that Stroman's comments made her uncomfortable and the majority of his comments were sexual in nature.

Accordingly, summary judgment is denied as to Bermudez's hostile work environment claim due to sexual harassment under the NYCHRL in Count Eighteen.

38

Moreover, as discussed in the context of Bermudez's claim under the NYSHRL, it is clearly established that New York city law prohibits sexual harassment and discrimination in the workplace. See N.Y. City Admin. Code § 8-107. Stroman is therefore not entitled to qualified immunity under New York law.

19. Count Nineteen—Discrimination based on Religion under NYCHRL

As discussed, claims of employment discrimination under the NYCHRL are analyzed under the same framework applicable Section 1983 and NYSHRL claims. See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010). Thus, Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Stroman is dismissed for the same reasons that her religious discrimination claims under Section 1983 and the NYSHRL in Counts Seven and Thirteen are dismissed.

20. Count Twenty—Retaliation under NYCHRL

Under the NYCHRL, a plaintiff does not have to allege a materially adverse employment action to sustain a retaliation claim. All that is required is that the retaliatory act be likely to deter a person from engaging in the protected activity. See Kumaga, 2010 WL 1444513, at *15.

Bermudez alleges that she reported Stroman to a PBA delegate and to the NYPD's OEEO, and that Stroman instructed another officer that "under no circumstances is he to grant [Bermudez] any sick, vacation and/or chart days." (Compl. ¶ 119.) As discussed, it is unclear whether Bermudez was in fact denied future sick and vacation days. However, the denial of such benefits would be likely to deter a person from engaging in protected activity.

Count Twenty is dismissed without prejudice. Bermudez may amend her claim to allege facts from which to infer that she was actually denied sick and vacation days because of Stroman's actions.

21. Count Twenty-One—Hostile Work Environment under NYCHRL

As discussed in Count Eighteen, Stroman is not entitled to summary judgment on Bermudez's hostile work environment claim under the NYCHRL. Stroman is also not entitled to qualified immunity under New York law.

**B.  Police Officer Denise Diaz**

1.  Count One—Race Discrimination under Section 1981

In her First Cause of Action, Bermudez alleges that Diaz discriminated against her on the basis of race.

Only one incident involving Diaz is alleged to have occurred after February 16, 2006. Bermudez alleges that on, May 15, 2007, she had an altercation with Defendant Diaz while she was signing the "Command Log." (Compl. ¶¶ 112-16.) According to Bermudez, Diaz called her a "hypocrite who attends church, pretending to be a godly person hiding behind your religion. But, you are worse than the ones' who are not religious." (Id. ¶ 115.) Bermudez, however, does not allege that Diaz made the statement because of racial animus. Moreover, Diaz's statement is not in and of itself an adverse employment act and there are no allegations involving Diaz from which to infer that Bermudez suffered an adverse employment because of Diaz's statements. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); King v. Bratton, 2004 WL 3090605, at *4 (E.D.N.Y. Aug. 25, 2004).

Accordingly, Count One as against Diaz is dismissed for failure to state a claim.

2.  Count Two—Retaliation Under Section 1981

In her Second Cause of Action, Bermudez alleges a claim of unlawful retaliation against Diaz.

Bermudez does not allege that Diaz did anything to her because she engaged in a "protected activity." Bermudez does not allege that she filed a complaint or reported conduct or statements by Diaz to a supervisor or higher authority, who then took some retaliatory action. Moreover, apart from Diaz's statements in May 2007, which appear based on personal animosity, there are no allegations from which to infer that Diaz did anything to Bermudez in retaliation for any protected conduct Bermudez engaged in.

Accordingly, Count Two is dismissed as against Diaz for failure to state a claim.

3.   Count Three—Hostile Work Environment Under Section 1981

In Count Three, Bermudez asserts a hostile work environment claim against Diaz.

Bermudez alleges that after Bermudez was confirmed in 2004, Diaz would "scream" "Praise the Lord, Hallelujah" when Bermudez entered a room. (O'Connor Decl. Ex. A, 47:3-9.) Bermudez also testified that in August or October 2007, Diaz called Bermudez a "hypocrite, that [she] was worse than people that didn't attend church, that [she] hid [her] religion to pretend [she] was a nice person but [she] wasn't a nice person. (Id. at 48:9-18.)

To withstand summary judgment, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). There are only two incidents during Bermudez's time in the BECT involving Diaz and neither is sufficiently severe as to have altered the conditions of Bermudez's employment. Moreover, the 2007 incident was isolated, occurred approximately two years after the first incident, and appears based on personal animosity between Diaz and Bermudez. An environment peppered with "personal animosity" is insufficient to establish a hostile work environment. See, e.g., White v. Fuji Photo Film USA,

41

Inc., 434 F. Supp. 2d 144, 154-155 (S.D.N.Y. 2006); Forts v. City of N.Y. Dep't of Corr., 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003). No reasonable juror could conclude that Diaz's statements were sufficiently severe and pervasive as to have altered the conditions of her working environment. Whidbee, 223 F.3d at 69.

Accordingly, Count Three is dismissed as against Diaz for failure to state a claim.

4. Count Four—Race Discrimination Under Section 1983

In her Fourth Cause of Action, Bermudez alleges that Stroman discriminated against her on the basis of her race.

Because race discrimination claims under Section 1981 and Section 1983 are treated the same, Count Four is dismissed for the same reason as Count One.

5. Count Five—Gender Discrimination under Section 1983

In Count Five, Bermudez alleges that Diaz discriminated against her on the basis of gender.

There is no allegation of fact tending to show that the May 2007 incident with Diaz—the only timely allegation involving Diaz—was motivated by Bermudez's gender, and it cannot be inferred from Diaz's statement that she discriminated against Bermudez because she is female. Bermudez's complaint alleges that the "City and its agents have a long history of discriminating against female minority officers" (Compl. ¶ 11) is insufficient without any supporting allegations. Moreover, there are no allegations that Diaz's statements resulted in an adverse employment action.

As discussed with regards to Stroman, Bermudez's gender discrimination claims are duplicative of her sexual harassment and hostile work environment claims. All of her gender-based allegations deal with sexual harassment by certain Defendants—and sexual harassment is a

42

form of gender discrimination.  Thus, Bermudez's independent claims of gender discrimination are duplicative.

Accordingly, Diaz's claim of gender discrimination ion Count Five is dismissed for failure to state a claim.

### 6.  Count Six—Sexual Harassment under Section 1983

In her Sixth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment.  However, there are no allegations in the complaint that Diaz made any sexual advances or sexually-charged comments to Bermudez, or participated in or facilitated such conduct by others.  Thus, Count Six is dismissed as against Diaz for failure to state a claim.

### 7.  Count Seven—Discrimination based on Religion under Section 1983

In Bermudez's Seventh Cause of Action, Bermudez alleges that Diaz discriminated against her because she is Catholic.

In May 2007, Diaz told Bermudez, "You are a hypocrite who attends church, pretending to be a godly person hiding behind your religion.  But, you are worse than the ones' who are not religious" (id. ¶ 115).  Diaz's statements, however, are not adverse employment actions—a necessary element of an employment discrimination claim—and Bermudez does not allege any timely acts that could be construed as adverse employment actions involving Diaz.  See, e.g., Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir. 2000) (federal and state law); Williams v. New York City Housing Auth., 2009 WL 1774271, at *1 (2d Cir. June 24, 2009) (Section 1983 employment-discrimination claims).  There are no other allegations of conduct by Diaz that is within the three-year limitations period.  Diaz insulted Bermudez—which is not a reason to bring a federal lawsuit.

43

Accordingly, Count Seven is dismissed as against Diaz for failure to state a claim.

8. Count Eight—Retaliation under Section 1983

Bermudez's retaliation claim under Section 1983 in her Eighth Cause of Action as against Diaz is dismissed for the same reasons that her retaliation claim under Section 1981 in Count Two is dismissed.

9. Count Nine—Hostile Work Environment under Section 1983

In her Ninth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. As discussed in Count Three, Diaz's motion to dismiss is granted as to the hostile work environment claim.

10. Count Ten—Race Discrimination under NYSHRL

In Count Ten, Bermudez alleges that she was discriminated against because of her race in violation of the NYSHRL.

As was true of her claims under Section 1983, Bermudez must plead that the discriminatory act occurred because of race or some other protected status. See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (N.Y. 2004) (NYSHRL and NYCHRL standards). Moreover, only Diaz's May 2007 comments fall within the three-year limitations period and Diaz's statements are not an adverse employment action. Thus, there are no allegations linking the May 2007 incident involving Diaz to Bermudez's race and there are no allegations of an adverse employment action.

Accordingly, Bermudez's race discrimination claim under the NYSHRL is dismissed for failure to state a claim.

44

### 11. Count Eleven—Gender Discrimination under NYSHRL

Bermudez's gender discrimination claim under the NYSHRL in her Eleventh Cause of Action as against Diaz is dismissed for the same reasons that her gender discrimination claim under Section 1983 in Count Five is dismissed.

### 12. Count Twelve—Sexual Harassment under NYSHRL

In her Twelfth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. As discussed, there are no sexually-based allegations including Diaz. Thus, Bermudez's NYSHRL hostile work environment claim is dismissed for failure to state a claim.

### 13. Count Thirteen—Discrimination based on Religion under NYSHRL

In her Thirteenth Cause of Action, Bermudez alleges that she was discriminated against by Diaz because of her religion. As discussed, there are no allegations that Bermudez suffered any adverse employment action from Diaz because of religious animosity.

Thus, Bermudez's religious discrimination claim under the NYSHRL in her Thirteenth Cause of Action as against Diaz is dismissed for failure to state a claim.

### 14. Count Fourteen—Retaliation under NYSHRL

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as against Diaz is dismissed for the same reasons that her retaliation claims under Section 1981 in Count Two and under Section 1983 in Count Eight are dismissed.

### 15. Count Fifteen—Hostile Work Environment under NYSHRL

In her fifteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. For the reasons discussed above, Count Fifteen is dismissed as against Diaz.

### 16. Count Sixteen—Race Discrimination under NYCHRL

45

In Count Sixteen, Bermudez alleges that she was discriminated against on the basis of her race.

Bermudez must plead facts tending to show that a discriminatory act occurred because of race, religion or some other protected status. See Kumaga v. New York City School Const. Auth., 2010 WL 1444513 at *15 (N.Y. Sup. Ct. Apr. 2, 2010) (NYCHRL); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (N.Y. 2004) (NYSHRL and NYCHRL standards). There is no allegation of any discriminatory act on Diaz's part. She uttered an insult at Bermudez. There are no allegations that Diaz's insult resulted in an adverse employment action.

Accordingly, Count Sixteen is dismissed for failure to state a claim.

17. Count Seventeen—Gender Discrimination under NYCHRL

Bermudez's gender discrimination claim under the NYCHRL in her Seventeenth Cause of Action as against Diaz is dismissed for the same reasons that her gender discrimination claims in Counts Five and Eleven are dismissed—principally, that the only gender-based allegations are duplicative of other claims for relief.

18. Count Eighteen—Sexual Harassment under NYCHRL

In her Eighteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. But Diaz's statements are not gender-based so as to support a hostile work environment claim based on sexual harassment. Williams, 872 N.Y.S.2d at 13. Thus, Count Eighteen is dismissed for failure to state a claim.

19. Count Nineteen—Discrimination based on Religion under NYCHRL

Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Diaz is dismissed for the same reasons that her religious discrimination claims under Section 1983 and the NYSHRL in Counts Seven and Thirteen are dismissed.

46

20. Count Twenty—Retaliation under NYCHRL

Even under the NYCHRL's more lenient standard for claims of retaliation, Diaz's insulting statement alone is not a retaliatory act, because it did not affect the terms and conditions of employment and, while insulting, would not deter a person from engaging in a protected activity, see Kumaga, 2010 WL 1444513, at *15. Also, there is no allegation tending to show that Diaz insulted Bermudez because she engaged in a protected activity.

Thus, Bermudez's retaliation claim under the NYCHRL in her Twentieth Cause of Action as against Diaz is dismissed for the same reasons that her retaliation claims in Counts Two, Eight, and Fourteen are dismissed.

21. Count Twenty-One—Hostile Work Environment under NYCHRL

In her Twenty-First Cause of Action, Bermudez alleges that she was subject to a hostile work environment.

Even under the more permissive NYCHRL, Bermudez's allegations do not state a claim for hostile work environment against Diaz. As discussed, "[p]etty slights and trivial inconveniences" are not actionable under the NYCHRL. Williams, 872 N.Y.S.2d at 17 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998)); see also Diagne v. New York Life Ins. Co., 2010 WL 5625829, at **16-17 (S.D.N.Y. Dec. 8, 2010) (granting defendant's summary judgment motion on plaintiff's hostile work environment claim under NYCHRL); see also Wilson v. N.Y.P. Holdings, Inc., 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009); Fullwood v. Assoc. for the Help of Retarded Children, Inc., 2010 WL 3910429, at *9 (S.D.N.Y. Sept. 28, 2010) (explaining that summary judgment is appropriate when "the incidents alleged amount to only sporadic insensitive comments").

Accordingly, Diaz's motion to dismiss is granted as to Count Twenty-One.

47

### C. Police Officer Serina Smith

1. Count One—Race Discrimination under Section 1981

In her First Cause of Action, Bermudez alleges that Smith discriminated against her on the basis of race.

The only allegation in the complaint involving Smith stems from the October 2007 sexually explicit incident involving Stroman. As was the case with Bermudez's allegations against Diaz, Bermudez does not allege a link between the October 2007 incident and her race. Moreover, the October 2007 incident is not an adverse employment action, except insofar as it was part of a pattern of sexual harassment and a hostile work environment.

There are no other allegations involving Smith in the complaint.

Accordingly, Count One as against Smith is dismissed for failure to state a claim.

2. Count Two—Retaliation under Section 1981

Bermudez also asserts a retaliation claim against Smith.

As discussed with regards to Diaz, Bermudez does not allege that she engaged in any "protected activity" involving Smith, or that she complained about or reported Smith's conduct to a supervisor or other authority. Nor does she allege facts tending to show that Smith participated in the disgusting pantomime with Stroman because Bermudez had filed a complaint against Stroman—which is the only protected activity alleged in the complaint. Finally, there are no allegations from which to infer that Bermudez suffered an adverse employment action because she engaged in a protected activity. See, e.g., Schiano v. Qual. Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006).

Accordingly, Count Two is dismissed for failure to state a claim.

48

### 3. Count Three—Hostile Work Environment under Section 1981

#### a. Hostile Work Environment

Bermudez testified to only one incident involving Smith. According to Bermudez, in October 2007, Smith "opened her legs and told Lieutenant Stroman come eat" in response to Stroman stating that he was "very hungry." (O'Connor Decl. Ex. A, 68:6-15.) Bermudez claims that Stroman then "stuck out his mouth simulating oral sex." (Id. at 68:6-15.) Smith was involved in a single, isolated incident. A single incident may create a hostile work environment if it is sufficiently severe. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 -227 (2d Cir. 2004). A reasonable jury could conclude that the October 2007—a gross incident of sexual harassment—was sufficiently severe so as to create a hostile work environment, especially in light of Bermudez's other allegations of sexual harassment involving Stroman. Id.

Accordingly, Smith's motion to dismiss Count Three for failure to state a claim is denied.

#### b. Qualified Immunity

As discussed, an employee's right to be free from sexual harassment in the workplace is well-settled and has been for some time. See Carrero v. New York City Housing Auth., 890 F.2d 569 (2d Cir. 1989) (recognizing claim for hostile environment sexual harassment under the Equal Protection Clause); see also Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 130 (2d Cir. 2004).

No reasonable person in Smith's position could have thought that she was permitted to engage in a gross and sexually explicit act towards a colleague in the workplace. If Smith did what Bermudez alleges, then she is not entitled to qualified immunity under federal law.

Accordingly, Smith's motion for summary judgment on the grounds of qualified immunity is denied.

### 4. Count Four—Race Discrimination Under Section 1983

For the same reasons that Bermudez's Section 1981 race discrimination claim in Count One is dismissed, Bermudez's claim in Count Four is also dismissed.

### 5. Count Five—Gender Discrimination under Section 1983

The only allegation in the complaint involving Smith is the October 7, 2007 sexually explicit incident that included Stroman. (Compl. ¶¶ 121-23.) It cannot be inferred from the complaint that Smith engaged in this conduct because of gender-based animus towards Bermudez. Additionally, there are no allegations that Smith's conduct resulted in an adverse employment act (other than the creation of a hostile work environment—which is covered by Count Three—or sexual harassment—which is covered by Count Six). Moreover, the allegations that are gender-based are all covered in Bermudez's the hostile work environment and sexual harassment claims.

Thus, Count Five is dismissed for failure to state a claim.

### 6. Count Six—Sexual Harassment under Section 1983

In her Sixth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. As discussed in the context of Bermudez's hostile work environment claim in Count Three, Bermudez has alleged sufficient facts from which a reasonable juror could find that Bermudez was subject to a workplace permeated with sexual harassment.

Additionally, as discussed in Count Three, Smith is not entitled to qualified immunity under federal law.

Smith is not entitled to summary judgment on the basis of qualified immunity as to Count Six.

50

7. Count Seven—Discrimination because of Religious Beliefs under Section 1983

There are no allegations in the complaint (falling inside or outside the limitations period) that Smith made statements or engaged in conduct because of Bermudez's religion. Moreover, it cannot be inferred from the complaint that Smith engaged in the sexually explicit act in October 2007, because Bermudez is Catholic. Additionally, there are no allegations that Smith's conduct resulted in an adverse employment act. As such, Count Seven is dismissed for failure to state a claim.

8. Count Eight—Retaliation under Section 1983

Bermudez's retaliation claim under Section 1983 in her Eighth Cause of Action as against Smith is dismissed for the same reasons that her retaliation claim under Section 1981 in Count Two is dismissed.

9. Count Nine—Hostile Work Environment under Section 1983

In her Ninth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. For the same reasons as discussed in Count Three, Count Nine is not dismissed and Smith is not entitled to qualified immunity.

10. Count Ten—Race Discrimination under NYSHRL

Bermudez's race discrimination in employment claim under the NYSHRL in her Tenth Cause of Action as against Smith is dismissed for the same reasons that her race discrimination claim under Section 1983 in Counts Four is dismissed.

11. Count Eleven—Gender Discrimination under NYSHRL

Count Eleven is dismissed for the same reasons that Bermudez's gender discrimination claim under Section 1983 in Count Five is dismissed.

12. Count Twelve—Sexual Harassment under NYSHRL

For the reasons discussed above, Smith's motion for summary judgment on the basis of qualified immunity as to Bermudez's hostile work environment claim based on sexual harassment in Count Twelve is denied.

13. Count Thirteen—Discrimination based on Religion under NYSHRL

Count Thirteen is dismissed for the same reasons that Bermudez's religious discrimination claim in Count Seven is dismissed.

14. Count Fourteen—Retaliation under NYSHRL

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as against Smith is dismissed for the same reasons that her retaliation claims under Section 1981 in Count Two and under Section 1983 in Count Eight are dismissed.

15. Count Fifteen—Hostile Work Environment under NYSHRL

As discussed, Smith's summary judgment motion as to Count Fifteen is denied for the same reasons that apply to Bermudez's hostile work environment claims in Counts Three and Nine.

16. Count Sixteen—Race Discrimination under NYCHRL

As was true of discrimination claims under federal and New York state law, claims of employment discrimination under the NYCHRL require allegations tending to show an adverse employment action. Kumaga v. New York City Sch. Constr. Auth., 2010 WL 1444513, at *15 (N.Y. Sup. Ct. Apr. 2, 2010). There are no allegations that Smith's conduct resulted in an adverse employment act.

Count Sixteen is dismissed for failure to state a claim.

52

17. Count Seventeen—Gender Discrimination under NYCHRL

Bermudez's gender discrimination claim under the NYCHRL in her Seventeenth Cause of Action as against Smith is dismissed for the same reasons that her gender discrimination claims under Section 1983 and the NYSHRL in Counts Five and Eleven are dismissed.

18. Count Eighteen—Sexual Harassment under NYCHRL

In her Eighteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. Under the NYCHRL, the issue in a hostile work environment claim based on harassment is whether the plaintiff has shown that she was "treated less well than other employees because of her gender." Williams v. New York City Housing Auth., 872 N.Y.S.2d 27, 39 (Jan. 27, 2009). Smith has set forth evidence of unwanted gender based conduct—namely, the sexually explicit act from October 2007 involving Smith and Stroman.

Thus, Smith's motion for summary judgment on the basis of qualified immunity is denied as to Bermudez's claim under the NYCHRL.

19. Count Nineteen—Discrimination based on Religion under NYCHRL

Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Smith is dismissed for the same reasons that her religious discrimination claims under Section 1983 and the NYSHRL in Counts Seven and Thirteen are dismissed.

20. Count Twenty—Retaliation under NYCHRL

Bermudez's retaliation claim under the NYCHRL in her Twentieth Cause of Action as against Smith is dismissed for the same reasons that her retaliation claims under Section 1981, Section 1983, and NYSHRL in Counts Two, Eight, and Fourteen are dismissed.

53

21. Count Twenty-One—Hostile Work Environment under NYCHRL

For the reasons discussed, Smith's motion for summary judgment on the grounds of qualified immunity as to Count Twenty-One is denied.

## D. Police Officer Edward Sanabria

### 1. Count One—Race Discrimination under Section 1981

In her First Cause of Action, Bermudez alleges that Sanabria discriminated against her on the basis of race.

Claims under Section 1981 have a four-year statute of limitations. Thus, a claim based on conduct that occurred before February 16, 2006 is untimely.

There are no alleged acts of discrimination involving Sanabria that occurred between February 16, 2006 and February 16, 2010. The most recent allegation involving Sanabria occurred on August 17, 2005. On that day, Sanabria made a comment in Bermudez's presence about officers lying about their injuries (a comment not suggestive of any racial animus).

Accordingly, Count One as against Sanabria is barred by the statute of limitations.

### 2. Count Two—Retaliation under Section 1981

Bermudez does not allege that she engaged in any "protected activity" involving Sanabria. Bermudez does not allege that she filed a complaint or reported conduct or statements by Sanabria to a higher authority, or that Sanabria did anything to her because of her actions.

Although Bermudez asked Stroman for a shift change in 2004, she does not allege that Sanabria "retaliated" or did anything to her in response to that request.

Accordingly, Counts Two as against Sanabria is dismissed for failure to state a claim.

54

3. Count Three—Hostile Work Environment under Section 1981

a. Hostile Work Environment

Bermudez testified that Sanabria was assigned to the BECT in January 2005. Approximately one month after joining the BECT, Sanabria and Bermudez became partners. After one month, Sanabria asked Bermudez out to dinner and Bermudez accepted. (Decl. of Andrea O'Connor ("O'Connor Decl.") Ex. A, 74:7-22.) After dinner, Bermudez invited Sanabria to her apartment to fix her computer and Sanabria spent the night. (Id. at 75:16-76:3.) Bermudez testified that Sanabria slept on the couch and was a "perfect gentleman." (Id. at 76:10-23.) Following their "date," Bermudez claims that Sanabria was under the impression that the two were a "couple." (Id.)

On one occasion, Sanabria and Bermudez were inside a patrol car that Sanabria was driving. Bermudez explained to Sanabria that it was "not a good idea" to have a romantic relationship and, in response, Sanabria "became irate and he just zoomed driving like a bat out of hell in the patrol car to the point [that] [Bermudez] was really afraid." (Id. at 80:5-25.) Bermudez did not report this incident to anyone at the NYPD. (Id. at 81)

Bermudez testified that in 2004 or 2005 Sanabria would stand "an inch or two inches away from" her back while she was dusting for fingerprints and "look over [her] shoulder to [see] what [she] was doing." (Id. at 84:4-19.)

Bermudez also alleges that in December 2004 or December 2005, after a department holiday party, Sanabria visited Bermudez at her home and became irate and starting yelling after Bermudez explained that she did not have feelings for him. (Id. at 89.) Following this incident, Bermudez explained to Lieutenant Stroman that she "no longer felt comfortable working with" Sanabria and asked that her shift be changed. (Id. at 91-12-24.) Bermudez testified that her

55

request was granted and her shift was changed. Following the shift change, Bermudez had no further contact with Sanabria.

Bermudez has alleged a claim of hostile work environment due to sexual harassment by certain colleagues and supervisors. Bermudez has adduced sufficient evidence from which a reasonable jury could conclude that Sanabria's conduct contributed to that hostile work environment. Moreover, the continuing-violation exception saves Bermudez's claim as against Sanabria because she has alleged at least one timely act and "all acts which constitute the claim are part of the same unlawful employment practice"—namely, the use of sexual comments and sexually charged conduct in the workplace. Morgan, 536 U.S. at 122.

Accordingly, Sanabria's motion to dismiss Count Three is denied.

b. Qualified Immunity

As discussed with regards to Stroman and Smith, Sanabria is also not entitled to qualified immunity as to Bermudez's hostile work environment claim.

4. Count Four—Race Discrimination Under Section 1983

Claims under Section 1983 have a three-year statute of limitations. The last allegation involving Sanabria occurred on August 5, 2005, when Sanabria made a comment about officers "scamming the system with fake injuries." (Compl. ¶ 69.) Sanabria's comment is outside the three-year statute of limitations period—having occurred approximately eighteen months before February 16, 2007. There are no allegations involving Sanabria that occurred within the three-year period.

Accordingly, Count Four as against Sanabria is barred by the statute of limitations.

56

5. Count Five—Gender Discrimination under Section 1983

As discussed with regards to Bermudez's race discrimination claim, there are no timely allegations involving Sanabria. All of the conduct Bermudez complains of occurred in 2004 or 2005. Without a discriminatory gender-based act occurring within the limitations period as a result of Bermudez's gender, the continuing-violation exception does not apply. See Fleming v. Maxmara USA, Inc., 2010 WL 1170247, at *3 (2d Cir. 2010). Moreover, the factual allegations that relate to Bermudez's gender are all covered in Bermudez's the hostile work environment and sexual harassment claims. Count Five is merely duplicative of Counts Three and Six.

Accordingly, Count Five is barred by the statute of limitations.

6. Count Six—Sexual Harassment under Section 1983

In her Sixth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. As discussed, in Count Three, Bermudez's hostile work environment claim based on sexual harassment is timely under the continuing-violation exception. Moreover, Bermudez has alleged sufficient evidence from which a reasonable juror could conclude that Sanabria's conduct contributed to the sexual harassment she suffered in the Patrol Borough Bronx. Thus, Sanabria's motion to dismiss Count Six is denied.

7. Count Seven—Discrimination because of Religious Beliefs under Section 1983

There are no allegations in the complaint (falling inside or outside the limitations period) that Sanabria made statements or engaged in conduct because of Bermudez's religion. Indeed, none of the allegations involving Sanabria even mention Bermudez's religion. Moreover, all of the allegations that do involve Sanabria are outside of the limitations period.

Accordingly, Count Seven as against Sanabria is dismissed for failure to state a claim and, alternatively, is barred by the statute of limitations.

8. Count Eight—Retaliation under Section 1983

Bermudez's retaliation claim under Section 1983 in her Eighth Cause of Action as against Sanabria is dismissed for the same reasons that her retaliation claim under Section 1981 in Count Two is dismissed.

Bermudez has failed to state a claim under Section 1981 or Section 1983.

9. Count Nine—Hostile Work Environment under Section 1983

In her Ninth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. As discussed in Count Three, Bermudez's claim is not dismissed. Sanabria's motion for summary judgment based on qualified immunity is denied.

10. Count Ten—Race Discrimination under NYSHRL

Bermudez's race discrimination in employment claim under the NYSHRL in her Tenth Cause of Action as against Sanabria is dismissed for the same reasons that her race discrimination claim under Section 1983 in Counts Four is dismissed. Both claims are barred by the statute of limitations.

11. Count Eleven—Gender Discrimination under NYSHRL

Bermudez's gender discrimination claim in her Eleventh Cause of Action as against Sanabria is dismissed for the same reasons that her gender discrimination claim under Section 1983 in Count Five is dismissed. The claims are barred by the statute of limitations.

12. Count Twelve—Sexual Harassment under NYSHRL

In her Twelfth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment.

As discussed in Count Six, Sanabria's motion for summary judgment on the grounds of qualified immunity is denied.

58

13. Count Thirteen—Discrimination based on Religion under NYSHRL

Bermudez's religious discrimination claim under the NYSHRL in her Thirteenth Cause of Action as against Sanabria is dismissed for the same reasons that her religious discrimination claim under Section 1983 in Count Seven is dismissed. Both claims are barred by the statute of limitations and Bermudez has also failed to state a claim.

14. Count Fourteen—Retaliation under NYSHRL

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as against Smith is dismissed for the same reasons that her retaliation claims under Section 1981 in Count Two and under Section 1983 claim in Count Eight are dismissed. Under federal or state law, Bermudez does not state a claim entitled to relief.

15. Count Fifteen—Hostile Work Environment under NYSHRL

In her fifteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. As discussed in Counts Three and Nine, Sanabria's motion for summary judgment on the grounds of qualified immunity is denied.

16. Count Sixteen—Race Discrimination under NYCHRL

Bermudez's race discrimination claim under the NYCHRL in her Sixteenth Cause of Action as against Sanabria is dismissed for the same reasons that her race discrimination claims under Section 1981, Section 1983, and the NYSHRL in Counts One, Four and Ten are dismissed.

17. Count Seventeen—Gender Discrimination under NYCHRL

Bermudez's gender discrimination claim under the NYCHRL in her Seventeenth Cause of Action as against Sanabria is dismissed for the same reasons that her gender discrimination claims under Section 1983 and the NYSHRL in Counts Five and Eleven are dismissed.

59

18. Count Eighteen—Sexual Harassment under NYCHRL

In her Eighteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. For the same reasons that her Section 1981, Section 1983, and NYSHRL claims are not dismissed, her claim under the NYCHRL is not dismissed.

Sanabria is also not entitled to qualified immunity under New York law. "To be entitled to qualified immunity, it must be established that it was objectively reasonable for the police officers involved to believe that their conduct was appropriate under the circumstances, or that officers of reasonable competence could disagree as to whether their conduct was proper." Allen v. City of New York, 03 Civ. 2829, 2007 WL 24796, at *24 (S.D.N.Y. Jan. 3, 2007) (internal citations and quotations omitted). New York city and state law does not permit sexual harassment in the workplace. As such, Sanabria could not have believed that his conduct was objectively reasonable.

Accordingly, Sanabria's motion for summary judgment on the grounds of qualified immunity is denied.

19. Count Nineteen—Discrimination based on Religion under NYCHRL

Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Sanabria is dismissed for the same reasons that her religious discrimination claims under Section 1983 and the NYSHRL in Counts Seven and Thirteen are dismissed.

20. Count Twenty—Retaliation under NYCHRL

Bermudez does not allege that she suffered any consequences as a result of reporting Sanabria's conduct to Stroman. Alternatively, Bermudez's retaliation is barred by the statute of limitations. Thus, Bermudez's retaliation claim under the NYCHRL in her Twentieth Cause of

60

Action as against Sanabria is dismissed for the same reasons that her retaliation claims under Section 1981, Section 1983, and NYSHRL in Counts Two, Eight, and Fourteen are dismissed.

### 21. Count Twenty-One—Hostile Work Environment under NYCHRL

In her Twenty-First Cause of Action, Bermudez alleges that she was subject to a hostile work environment. As discussed, this claim is not dismissed and Sanabria is not entitled to qualified immunity.

### E. Sergeant Charles Neusch

#### 1. Count One—Race Discrimination under Section 1981

On January 9, 2007, Neusch "attempted" to give Bermudez a poor performance evaluation. (Compl. ¶¶ 107-08.) Although this act occurred within the limitations period, it is not an adverse employment action, because Neusch never gave Bermudez a poor evaluation—he only considered doing it.

This is the quintessential example of a discrete act. See Nat'l R.R. Passenger Corp. v. Morgan, 539 U.S. 101, 113-15 (2002). Moreover, there are no allegations that Neusch's act was due to Bermudez's race.

Additionally, Bermudez alleges that in October or November 2006, Neusch posted a "Finest Message" stating that Bermudez was transferred from the BECT to the Vest Unit. (Compl. ¶ 97.) Again, there are no allegations that Neusch posted the message because of Bermudez's race. In fact, she was transferred. The posting of the message is not actionable and the transfer is alleged to have been brought about by Bax and Stroman, not Neusch. (Compl. ¶ 77.)

Moreover, none of Bermudez's allegations concerning Neusch alleges that she suffered an adverse employment action because of Neusch's conduct.

61

Accordingly, Count One as against Neusch is dismissed for failure to state a claim.

2. Count Two—Retaliation under Section 1981

There are no allegations of retaliatory conduct by Neusch to support a claim under Section 1981. Bermudez alleges that Neusch in October or November 2006 posted a "Finest Message" in the BECT, allowing others in the department to know that she was transferred to the Vest Unit. Neusch's act is not a materially adverse employment action.

Moreover, Bermudez does not allege that she engaged in any "protected activity" involving Neusch. There are no allegations that Bermudez complained about or reported Neusch or that she did anything else involving Neusch that would amount to a protected activity. Bermudez also does not allege that Neusch posted the "Finest Message" in the BECT in retaliation for Bermudez's complaint about Stroman to the NYPD's Office of Equal Employment Opportunity. There are no allegations that Neusch even knew that a complaint had been filed against Stroman.

Thus, Count Two as against Neusch is dismissed for failure to state a claim.

3. Count Three—Hostile Work Environment under Section 1981

Bermudez worked with Neusch from January 2005 until November 2007, because both were assigned to the 6:00 a.m. to 2:35 p.m. shift.   According to Bermudez, Neusch had certain opinions about women. Specifically, Neusch "voiced [his] opinions that women should not be [police officers]." (O'Connor Decl. Ex. A, 12:2-12.) Bermudez testified that Neusch made such comments "pretty often when Hillary Clinton was running for president, whenever a female was being promoted or anything of significance that was on the television that had to do with a female with a good job, a promotion of sorts." (Id. at 15:13-20.) Neusch believed that women should "stay at home" to "mak[e] babies." (Id. at 15:21-24.) According to Bermudez, Neusch

62

would make such comments regarding women once or twice a week, but Neusch did not make such comments during Bermudez's entire time in the BECT. (Id. at 16:10-20.)

Bermudez also testified that Neusch made certain comments regarding her ethnicity in 2006. According to Bermudez, Neusch stated that "not many Puerto Ricans, Hispanics, Latinos do anything for themselves. They are always on welfare. All they do is produce children." (Id. at 30:2-5, 30:6-11.)

While Bermudez was on medical leave in 2007, Bermudez claims that Neusch would call her once a week to ask when she would return to work. (Id. at 97:3-21.) Upon her return, Bermudez was placed on Restricted Duty by the department's medical division. Neusch repeatedly asked Bermudez if she was cleared to return to full duty. (Id. at 99:10-16, 100:6-12.) Bermudez also testified that she "overheard" Neusch saying that he believed Bermudez was "faking" her injury, but that he never made that comment to her directly. (Id. at 101:7-19; 101:11-13.)

Bermudez testified that Neusch had considered giving her a negative work evaluation "because [she] had been chronic A sick." (Id. at 111-112.) However, Bermudez explained that Neusch ultimately decided not to give her a negative evaluation. (Id.)

Bermudez also testified that she filed a complaint with the NYPD's OEEO in October 2006 alleging that Lieutenant Stroman sexually harassed her and that Sergeant Neusch told her that she was a "liar" and that she was "lying against Lieutenant Stroman." (Id. at 110:9-25; 111:3-7.)

Neusch's comments about the appropriate role of women and Hispanics are insufficient to maintain a claim of a hostile work environment under federal law. Such comments alone do not establish that the harassment was sufficiently "offensive, pervasive, and continuous . . . to

63

create an abusive working environment." See Behringer v. Lavelle School for Blind 2010 WL 5158644, at **12-13 (S.D.N.Y. 2010). As the Second Circuit has explained, "we are mindful that [federal law] does not establish a "general civility code" for the American workplace. Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004) (internal citations omitted). Bermudez does not allege that Neusch's behavior "unreasonably interfere[d]" with her work or that his comments were "physically threatening." It is plain from her testimony that Neusch's comments were merely offensive and infrequent. Mere offensive utterances are insufficient to sustain a hostile work environment claim. Harris, 510 U.S. at 23.

Additionally, Bermudez's testimony that Neusch believed she was "faking" her injury and lying about Lieutenant Stroman, even when coupled with his excessive phone calls, also do not establish a hostile work environment. Bermudez must allege that Neusch's comments about her injury, his statement that she was lying about Stroman, and his phone calls were the result of animus towards her because she is either female or Hispanic—that is, because she is a member of protected class. Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003). There is no evidence that Neusch's statements were driven by animosity towards Bermudez because she is a member of a protected class.

Moreover, even if Neusch was a supervisor in the Patrol Borough Bronx unit, under Section 1983 and Section 1981 supervisors can be sued individually, without directly participating in the underlying conduct, only if they promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. Stevens v. New York, 691 F. Supp. 2d 392, 400 (S.D.N.Y. 2009) (citing Al-Jundi v. Estate of

64

Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989)). "To lay a proper foundation for individual

liability, the plaintiff must plead 'specific, nonconclusory factual allegations' to establish the

participation at the necessary mental state of the individual defendants, or [her] claims against

them will be dismissed." Id. (citing Blue v. Koren, 72 F.3d 1075, 1083-84 (2d Cir. 1995)).

There is no evidence that Neusch promulgated discriminatory policies, caused the other

defendants' conduct or that Neusch participated in any discriminatory acts. There is also no

evidence that Neusch knew about the other Defendants' conduct and did nothing to stop it.

Absent such allegations, there is no basis for liability against Neusch based on his role as a

supervisor.

Accordingly, Neusch's motion to dismiss Count Three is granted.

4. Count Four—Race Discrimination Under Section 1983

As discussed in Count One, Bermudez does not allege that she suffered an adverse

employment action or that Neusch's actions were because of racial animosity towards Bermudez.

Additionally, the statute of limitations for claims under Section 1983 (unlike claims

under Section 1981) is three years. Thus, all of Bermudez's allegations against Neusch are

barred by the statute of limitations because they involve conduct that occurred in October or

Noevmeber 2006 and in January 2007. Only conduct occurring after February 16, 2007 is timely

and there are no allegations that involve conduct by Neusch after that date.

Accordingly, Count Four as against Neusch is barred by the statute of limitations.

5. Count Five—Gender Discrimination under Section 1983

As discussed for Count Four above, there are no allegations involving conduct by Neusch

that occurred after February 16, 2007.

65

Moreover, any gender-based allegations are covered in Bermudez's the hostile work environment and sexual harassment claims.

Thus, Count Five as against Neusch is barred by the statute of limitations.

6. Count Six—Sexual Harassment under Section 1983

In her Sixth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. Because hostile work environment claims under Section 1983 are treated similarly to claims under Section 1981, Neusch's motion to dismiss is granted for the reasons discussed for Count Three.

7. Count Seven—Discrimination based on Religion under Section 1983

As was true of her race and gender discrimination claims under Section 1983, Bermudez's claim in Count Seven is barred by the statute of limitations.

8. Count Eight—Retaliation under Section 1983

Bermudez's retaliation claim under Section 1983 in her Eighth Cause of Action as against Neusch is dismissed for the same reasons that her retaliation claim under Section 1981 in Count Two is dismissed. In both instances, Bermudez has failed to state a claim.

9. Count Nine—Hostile Work Environment under Section 1983

In her Ninth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. As discussed in Count Three, Neusch's motion to dismiss is granted as to Count Nine.

10. Count Ten—Race Discrimination under NYSHRL

Bermudez's race discrimination in employment claim under the NYSHRL in her Tenth Cause of Action is also subject to a three-year statute of limitations. Thus, like her Section 1983 claim in Count Four, this claim is also untimely.

11. Count Eleven—Gender Discrimination under NYSHRL

Bermudez's gender discrimination claim under the NYSHRL in her Eleventh Cause of
Action as against Neusch is also barred by the statute of limitations.

12. Count Twelve—Sexual Harassment under NYSHRL

In her Twelfth Cause of Action, Bermudez alleges that she was subject to a hostile work
environment due to sexual harassment.  Because hostile work environment claims due to sexual
harassment under the NYSHRL are treated the same as such claims under federal law, Count
Twelve is dismissed as to Neusch for the reasons discussed for Counts Three, Six, and Nine.

13. Count Thirteen—Discrimination based on Religion under NYSHRL

Bermudez's religious discrimination claim under the NYSHRL in her Thirteenth Cause
of Action as against Neusch is barred by the statute of limitations.

14. Count Fourteen—Retaliation under NYSHRL

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as
against Neusch is dismissed for the same reason that her retaliation claim under Section 1983 is
dismissed—both claims are barred by the statute of limitations.

15. Count Fifteen—Hostile Work Environment under NYSHRL

In her fifteenth Cause of Action, Bermudez alleges that she was subject to a hostile work
environment.  As discussed, in Counts Three, Six, Nine, and Twelve Neusch's motion to dismiss
this Count is granted.

16. Count Sixteen—Race Discrimination under NYCHRL

Bermudez's race discrimination claim under the NYCHRL in her Sixteenth Cause of
Action as against Neusch is barred by the statute of limitations.

67

17. Count Seventeen—Gender Discrimination under NYCHRL

Bermudez's gender discrimination claim under the NYCHRL in her Seventeenth Cause of Action as against Neusch is also untimely.

18. Count Eighteen—Sexual Harassment under NYCHRL

In her Eighteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment.

Even under the more lenient standard in the NYCHRL, Bermudez's allegations are insufficient to withstand a motion for summary judgment. "Petty slights and trivial inconveniences" are not actionable under the NYCHRL. Williams, 872 N.Y.S.2d at 17 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998)). The NYCHRL does not operate "as a general civility code." Id.; see also Diagne v. New York Life Ins. Co., 2010 WL 5625829, at **16-17 (S.D.N.Y. Dec. 8, 2010) (granting defendant's summary judgment motion on plaintiff's hostile work environment claim under NYCHRL). In Wilson v. N.Y.P. Holdings, Inc., 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009), for example, this Court, applying the more lenient NYCHRL standard, concluded that references to black females as "whores," "sluts," and "girls," among other things, over a number of years, amounted only to "petty slights and inconveniences" and so were not actionable under the NYCHRL. Similarly, Neusch's statements about women and Hispanics, while deeply offensive, are "petty slights and inconveniences" insufficient to sustain a hostile work environment claim.

Accordingly, Neusch's motion to dismiss is granted as to Count Eighteen.

19. Count Nineteen—Discrimination based on Religious Beliefs under NYCHRL

Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Neusch is barred by the statute of limitations.

20. Count Twenty—Retaliation under NYCHRL

Bermudez's retaliation claim under the NYCHRL in her Twentieth Cause of Action as against Neusch is dismissed for failure to state a claim.

21. Count Twenty-One—Hostile Work Environment under NYCHRL

As discussed in Count Eighteen, Bermudez has not adduced sufficient evidence from which a reasonable juror could conclude that Neusch's actions subjected Bermudez to a hostile work environment. As such, for the reasons discussed, Neusch's motion to dismiss is granted as to Count Twenty-One.

**F. Lieutenant Brandon Croke**

1. Count One—Race Discrimination under Section 1981

Bermudez alleges that Croke was also involved in changing her chart to an "administrative chart." (Compl. ¶ 95.) As discussed with regards to Stroman, the allegations in the complaint do not support an inference that Croke's act was due to animosity based on race.

Bermudez also alleges that Croke ordered her to work in the Vest Unit in October 2006. (Compl. ¶ 83.) There are no allegations that Croke's conduct was the result of animosity towards Bermudez because of her race. Additionally, none of Croke's actions amount to an adverse employment act.

Accordingly, Count One is dismissed as against Croke for failure to state a claim.

2. Count Two—Retaliation under Section 1981

In October 2006, Croke ordered Bermudez to work in the Vest Unit. Around the same time, Croke changed Bermudez's chart from a patrol to an administrative chart. There are no allegations that Croke did either of these acts because Bermudez engaged in protected activity. Indeed, there are no allegations that Bermudez complained about or reported Croke's behavior to

her supervisor, a PBA delegate, or the NYPD's OEEO. Moreover, there are no allegations that Croke knew about Bermudez's complaint to the OEEO regarding Stroman, or that Croke changed Bermudez's chart because of that complaint.

Accordingly, Count Two as against Croke is dismissed for failure to state a claim.

3. Count Three—Hostile Work Environment under Section 1981

Bermudez testified that Lieutenant Croke was a part of the Bronx Patrol Bureau but was not a member of the BECT—the specific group Bermudez worked in. (O'Connor Decl. Ex. A, 103:19-21.) According to Bermudez, Croke told her that she would be working in the Vest Unit while she was on restricted duty. (Id. 104:3-10, 105, 107:20-25.) Bermudez admits that it was not Croke's decision that she work in the Vest Unit. (Id.) Bermudez worked in the Vest Unit for two weeks in October or November 2006. As part of the Vest Unit, Bermudez had to distribute vests to NYPD personnel. (Id. at 105:22-25.) Croke's limited role—simply informing Bermudez that she was assigned to the Vest Unit—is not a sufficiently severe act to sustain a hostile work environment claim under Section 1981, or to be considered part of the behavior that made up a hostile work environment.

Bermudez also testified that Croke was in a position of authority (as a Lieutenant) and "could have taken a stand" (against Stroman and Bax), but did not. (Id. at 108:12-16.) According to Bermudez, Croke "knew" that what "they" were "doing" was "wrong" because "any time that [she] would ask him a question . . . he never would say it was his decision. He would always say it is Stroman and Inspector Bax." (Id. at 108:17-25.)

Bermudez's allegations do not suffice to show that Croke either created or condoned a hostile work environment. Bermudez's sole allegation regarding Croke is that he knew that she was being subjected to a hostile work environment and did nothing to stop it. Bermudez,

70

however, does not allege any facts from which to infer that Croke should have known or did know of the alleged hostile work environment. Merely holding a position of authority within the NYPD is insufficient to impose liability. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Additionally, there is no evidence that Croke, a supervisor in the Patrol Borough Bronx, promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. Stevens v. New York, 691 F. Supp. 2d 392, 400 (S.D.N.Y. 2009) (citing Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989)).

Further, Bermudez must show that the hostile work environment was "caused by animus towards her as a result of her membership in a protected class." Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003). There is no evidence that Croke participated in any acts or approved of any acts due to animosity towards Bermudez because of her religion, race, or gender.

Accordingly, Count Three is dismissed as to Croke.

4. Count Four—Race Discrimination Under Section 1983

Bermudez alleges that Croke ordered her to work in the Vest Unit in October 2006. Around the same time (between October and November 2006), Bermudez alleges that Croke changed her chart to "administrative" from "patrol." The statute of limitations for claims under Section 1983 is three years. Both acts are outside the three-year period and there are no other allegations concerning Croke in the complaint.

Accordingly, Count Four as against Croke is barred by the statute of limitations.

71

5. Count Five—Gender Discrimination under Section 1983

The statute of limitations for claims under Section 1983 is three years and, as discussed, there are no allegations involving Croke that occurred between February 16, 2007, and February 16, 2010.

Moreover, any gender-based allegations are covered in Bermudez's hostile work environment and sexual harassment claims.

Thus, Count Five as against Croke is dismissed.

6. Count Six—Sexual Harassment under Section 1983

In her Sixth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. Claims under Section 1983 have a three-year statute of limitations. There no allegations in the complaint that Croke made unwanted sexual advances or sexually-charged comments towards Bermudez at any time. Nor are there any allegations that Croke knew about the hostile work environment and sexual harassment and did nothing to fix the situation.

Thus, Count Six as against Croke is dismissed.

7. Count Seven—Discrimination because of Religious Beliefs under Section 1983

Bermudez does not allege any conduct by Croke that occurred within the three-year statute of limitations period. Nothing alleged against Croke involves religion.

Thus, Count Seven as against Croke is dismissed.

8. Count Eight—Retaliation under Section 1983

For the reasons discussed, Bermudez's retaliation claim as against Croke is dismissed.

9. Count Nine—Hostile Work Environment under Section 1983

Hostile work environment claims under Section 1983 have a three-year statute of limitations period. Although Bermudez's hostile work environment claim in Count Three under Section 1981 was timely (because of the four-year statute of limitations applicable to Section 1981 claims), all of her allegations involving Croke occurred in 2006. Thus, Bermudez's hostile work environment claim under Section 1983 is barred by the statute of limitations.

10. Count Ten—Race Discrimination under NYSHRL

The statute of limitations for claims under the NYSHRL (as is true for Section 1983 claims) is three years. Thus, Count Ten as against Croke is barred by the statute of limitations.

11. Count Eleven—Gender Discrimination under NYSHRL

Bermudez's gender discrimination claim under the NYSHRL in her Eleventh Cause of Action as against Croke is also barred by the statute of limitations.

12. Count Twelve—Sexual Harassment under NYSHRL

In her Twelfth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. The same reasons that warranted dismissal of this claim in Count Six under Section 1983 apply here. There are no allegations that Croke made or participated in any unwanted sexual advances or sexually-charged comments towards Bermudez, or that he knew about them and failed to intervene, and all of her allegations fall outside the statute of limitations period.

13. Count Thirteen—Discrimination because of Religious Beliefs under NYSHRL

Bermudez's religious discrimination claim under the NYSHRL in her Thirteenth Cause of Action as against Croke is dismissed for the same reasons that her religious discrimination claim under Section 1983 in Count Seven is dismissed. In both instances, Bermudez's claim is barred by the statute of limitations.

14. Count Fourteen—Retaliation under NYSHRL

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as against Croke is dismissed for the same reasons that her retaliation claims under Section 1983 in Count Eight is dismissed. Bermudez does not allege any timely acts and therefore her claim is barred by the statute of limitations.

15. Count Fifteen—Hostile Work Environment under NYSHRL

In her Fifteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. As discussed in the context of her hostile work environment claims in Count Nine, Bermudez's claim is barred by the statute of limitations.

16. Count Sixteen—Race Discrimination under NYCHRL

The statute of limitations for claims under the NYCHRL is also three years and the two allegations involving Croke occurred in October or November 2006—approximately 16 months after the statute of limitations expired on February 16, 2007. Thus, Count Sixteen as against Croke is barred by the statute of limitations.

17. Count Seventeen—Gender Discrimination under NYCHRL

As discussed, Count Seventeen is also barred by the statute of limitations because all of Bermudez's allegations involving Croke occurred in 2006.

18. Count Eighteen—Sexual Harassment under NYCHRL

In her Eighteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. The same reasons that warranted dismissal of this claim in Counts Six and Twelve under Section 1983 and the NYSHRL apply here. There are no allegations that Croke made any unwanted sexual advances or sexually-charged comments towards Bermudez, and all of her allegations fall outside the statute of limitations period.

74

19. Count Nineteen—Discrimination based on Religion under NYCHRL

Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Croke is barred by the statute of limitations.

20. Count Twenty—Retaliation under NYCHRL

Bermudez's retaliation claim under the NYCHRL in her Twentieth Cause of Action as against Croke is dismissed as barred by the statute of limitations.

21. Count Twenty-One—Hostile Work Environment under NYCHRL

In her Twenty First Cause of Action, Bermudez alleges that she was subject to a hostile work environment. Bermudez's claim is barred by the statute of limitations.

**G. Inspector Wayne Bax**

1. Count One—Race Discrimination under Section 1981

Bermudez alleges that sometime between August 2005 and February 2006, Bax threatened to transfer her from the BECT if she did not return to active duty. (Compl. ¶¶ 71-73.) There is no allegation that the "threat" occurred because Bermudez is Puerto Rican.

Bermudez also alleges that between October and November 2006, Bax changed Bermudez's chart from a "patrol" to an "administrative" chart. Again, Bermudez does not allege, nor can it be inferred from her other allegations, that Bax acted out of animosity towards Bermudez because of her race.

Accordingly, Count One as against Bax is dismissed for failure to state a claim.

2. Count Two—Retaliation under Section 1981

With regards to Bermudez's Section 1981 retaliation claim, Bermudez alleges that in October or November 2006, Bax (along with Croke and Stroman) changed her chart to an administrative chart. Bermudez did not file a complaint against Bax and there are no allegations

75

to support an inference that Bax changed Bermudez's chart in retaliation for Bermudez's complaint about Stroman to Anthony—a complaint that was filed more than a year before Bax's actions. Additionally, there are no allegations to support an inference that Bax changed Bermudez's chart in retaliation for Bermudez's complaint about Stroman to the NYPD's OEEO. Indeed, Bermudez does not allege that Bax even knew about the complaint filed on her behalf with the OEEO. Moreover, under Section 1981, Bermudez must allege that she suffered an adverse employment action and there are no allegations from which to infer that a change to an administrative chart is an adverse employment action.

Count Two is dismissed as against Bax for failure to state a claim.

3.  Count Three—Hostile Work Environment under Section 1981

Bermudez does not allege or provide any evidence that Bax was involved in or had knowledge of a working environment permeated with discriminatory acts, intimidation, ridicule or sexual harassment. Indeed, Bax is not mentioned as participating in any of the alleged incidents.

Bermudez testified that Bax in October 2006 assigned her to work in the Vest Unit for two weeks. (O'Connor Decl. Ex. A, 109:11-20.) This act is within the four-year statute of limitations for claims under Section 1981. Nonetheless, Bermudez's assignment to the Vest Unit for two weeks is a one-time act limited in duration and not sufficiently severe as to maintain a hostile work environment claim under Section 1981. No reasonable juror could conclude that a two-week assignment to the Vest Unit was sufficiently severe and pervasive conduct as to create a hostile work environment.

While Bax may have been a supervisor in the Patrol Borough Bronx unit, supervisors can be sued individually without direct participation only if they promulgated unconstitutional

76

policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. Stevens v. New York, 691 F. Supp. 2d 392, 400 (S.D.N.Y. 2009) (citing Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989)). "To lay a proper foundation for individual liability, the plaintiff must plead 'specific, nonconclusory factual allegations' to establish the participation at the necessary mental state of the individual defendants, or [her] claims against them will be dismissed." Id. (citing Blue v. Koren, 72 F.3d 1075, 1083-84 (2d Cir. 1995)). Bermudez does not allege that Bax's discriminatory polices authorized or caused the other defendants' conduct or that Bax participated in any discriminatory acts. Moreover, Bermudez does not allege that Bax knew about the other Defendants' conduct and did nothing to stop it. Absent such allegations, there is no basis for liability against Bax based on his role as a supervisor.

Thus, Count Three is dismissed as to Bax.

4. Count Four—Race Discrimination Under Section 1983

Bermudez alleges that Bax threatened to transfer her from the BECT if she did not return to active duty. Bermudez does not allege that Bax followed through on his threat, and she does not allege when the threat was made. The fair inference from the allegation in the complaint is that Bax made the threat between August 2005 and February 2006. (Compl. ¶¶ 71-73.) Thus, even if the "threat" were a discriminatory act, it is outside the three-year limitations period for claims under Section 1983.

Bermudez also alleges that Bax changed her chart from "patrol" to "administrative." Even if this were a discriminatory act, it is alleged to have occurred between October and November 2006 and is therefore outside the three-year limitations period. There are no other allegations involving Bax in the complaint.

77

Accordingly, Count Four as against Bax is barred by the statute of limitations.

5. Count Five—Gender Discrimination under Section 1983

As discussed in Count Four, none of Bermudez's allegations involving Bax occurred within the three-year limitations period for claims under Section 1983.

Count Five is barred by the statute of limitations.

Moreover, even if Bermudez's allegations against Bax were timely, her gender discrimination claim would still be dismissed for failure to state a claim. None of Bermudez's timely allegations against Bax makes any reference to gender or allege that she suffered a discriminatory act because she is a female police officer.

Additionally, any gender-based allegations are covered in Bermudez's the hostile work environment and sexual harassment claims.

6. Count Six—Sexual Harassment under Section 1983

In her Sixth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. As discussed with regards to Croke, there are no allegations that Bax engaged in any sexually-charged conduct or made any sexual advances or comments to Bermudez. There are no allegations that Bax was aware of the sexually-explicit conduct and sexual advances and did nothing to stop it. Moreover, none of Bermudez's allegations against Bax are timely—having occurred in either 2005 or 2006.

Thus, Count Six as against Bax is dismissed for failure to state a claim and, alternatively, is barred by the statute of limitations.

7.  Count Seven—Discrimination based on Religion under Section 1983

None of Bermudez's allegations involving Bax occurred between February 16, 2007, and February 16, 2010. Thus, Bermudez's claim of religious discrimination is barred by the statute of limitations.

Moreover, there are no allegations in the complaint that Bax made statements or engaged in conduct because of Bermudez's religion. There are also no allegations that Bax was aware of such comments and did not stop them. Indeed, none of the allegations involving Bax even mentions Bermudez's religion.

Thus, Count Seven is dismissed as untimely and, in the alternative, for failure to state a claim.

8.  Count Eight—Retaliation under Section 1983

There are no timely allegations to support a claim of retaliation under Section 1983, which is governed by a three-year statute of limitations period.

Thus, Count Eight as against Bax is barred by the statute of limitations.

9.  Count Nine—Hostile Work Environment under Section 1983

Hostile work environment claims under Section 1983 have a three-year statute of limitations and all of Bermudez's allegations involving Bax date back to 2005 or 2006—several months before the statute of limitations expired in February 16, 2007. There are no allegations involving conduct by Bax that occurred after February 16, 2007.

Thus, Count Nine is barred by the statute of limitations.

10. Count Ten—Race Discrimination under NYSHRL

Bermudez's race discrimination in employment claim under the NYSHRL is also governed by a three-year statute of limitations. As discussed, there are no timely acts involving Bax. Thus, Bermudez's claim in Count Ten as against Bax is barred by the statute of limitations.

11. Count Eleven—Gender Discrimination under NYSHRL

Bermudez's gender discrimination claim under the NYSHRL is also barred by the statute of limitations.

12. Count Twelve—Sexual Harassment under NYSHRL

In her Twelfth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment. As discussed in Count Six, there are no allegations that Bax engaged in any sexually-charged conduct and, moreover, all of Bermudez's allegations are untimely. Thus, Count Twelve as against Bax is dismissed for failure to state a claim and, alternatively, is barred by the statute of limitations.

13. Count Thirteen—Discrimination based on Religion under NYSHRL

Bermudez's religious discrimination claim under the NYSHRL in her Thirteenth Cause of Action as against Bax is barred by the statute of limitations.

14. Count Fourteen—Retaliation under NYSHRL

Bermudez's retaliation claim under the NYSHRL in her Fourteenth Cause of Action as against Bax is untimely.

15. Count Fifteen—Hostile Work Environment under NYSHRL

In her Fifteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment. Hostile work environment claims under the NYSHRL are also subject to a three-

year statute of limitations.  As was true of her claim in Count Nine, Bax did not engage in any conduct after February 16, 2007.

Accordingly, Count Fifteen is barred by the statute of limitations.

16. Count Sixteen—Race Discrimination under NYCHRL

Like claims under the NYSHRL, claims under the NYCHRL are also subject to a three-year statute of limitations.  Thus, Bermudez's race discrimination claim under the NYCHRL as against Bax in Count Sixteen is barred by the statute of limitations.

17. Count Seventeen—Gender Discrimination under NYCHRL

Similarly, Bermudez's gender discrimination claim under the NYCHRL in her Seventeenth Cause of Action as against Bax is also barred by the statute of limitations.

18. Count Eighteen—Sexual Harassment under NYCHRL

In her Eighteenth Cause of Action, Bermudez alleges that she was subject to a hostile work environment due to sexual harassment.  As discussed in Counts Six and Twelve, there are no allegations that Bax engaged in any sexually-charged conduct or made any sexual comments to Bermudez.  There are also no allegations of unwanted gender-based conduct as required for sexual harassment claims under the NYCHRL.  Moreover, all of Bermudez's allegations involving Bax occurred before February 16, 2007.

Thus, Count Eighteen as against Bax is barred by the statute of limitations and, in the alternative, is dismissed for failure to state a claim.

19. Count Nineteen—Discrimination based on Religion under NYCHRL

Bermudez's religious discrimination claim under the NYCHRL in her Nineteenth Cause of Action as against Bax is barred by the statute of limitations.

20. Count Twenty—Retaliation under NYCHRL

Bermudez's retaliation claim under the NYCHRL in her Twentieth Cause of Action as against Bax is also barred by the statute of limitations.

21. Count Twenty-One—Hostile Work Environment under NYCHRL

As discussed in Counts Nine and Fifteen, the hostile work environment claim in Count Twenty-One is also barred by the three-year statute of limitations.

### Bermudez's Claims Against The City

The City moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against it. The Court declines to dismiss Bermudez's claim against the City at the pleading stage. The City may move for dismissal of all claim against it at summary judgment.

## CONCLUSION

For the reasons discussed, the motions to dismiss by Neusch, Diaz, Croke, and Bax are granted for all claims asserted by Bermudez. As against Smith and Sanabria, Counts One, Two, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Nineteen, and Twenty are dismissed. Counts Three, Six, Nine, Twelve, Fifteen, Eighteen, and Twenty-One are not dismissed and Smith's and Sanabria's motions for summary judgment on the grounds of qualified immunity as to these counts are denied. As against Stroman, Counts One, Four, Five, Seven, Ten, Eleven, Thirteen, Sixteen, Seventeen, and Nineteen are dismissed. Counts Two, Eight, Fourteen, and Twenty are dismissed without prejudice as against Stroman. Stroman's motion for summary judgment on the grounds of qualified immunity for Counts Three, Six, Nine, Twelve, Fifteen, Eighteen, and Twenty-One is denied. The City's motion to dismiss all claims asserted against it is denied without prejudice.

Dated: March 25, 2011

_Allen M. Mol_

U.S.D.J.

BY EFC TO ALL COUNSEL